Anthony Douglas **RILEY**, Petitioner

v.

The **PEOPLE** of the State of Colorado, Respondent.

No. 09SC1054.

Supreme Court of Colorado, En Banc.

Dec. 19, 2011.

Douglas K. Wilson, Public Defender, Stephen C. Arvin, Deputy Public Defender, Denver, Colorado, Attorneys for Petitioner.

John W. Suthers, Attorney General, John T. Lee, Assistant Attorney General, Denver, Colorado, Attorneys for Respondent.

Justice RICE delivered the Opinion of the Court.

We review the court of appeals' decision in *People v. Riley*, 240 P.3d 334 (Colo.App. 2009), affirming petitioner Anthony Douglas Riley's convictions for attempted reckless manslaughter, reckless second degree assault, and a crime of violence sentence enhancer. The court of appeals, relying on its interpretation of this Court's opinion in *Peo-*

ple v. Jones, 675 P.2d 9 (Colo.1984), concluded that the trial court erred when it declined to submit Riley's suggested multiple assailants instruction to the jury. The court of appeals determined, however, that the error was harmless. It thus affirmed Riley's convictions.

We conclude that the trial court did not err when it rejected Riley's multiple assailants instruction because Jones does not require the instruction in this instance. We thus affirm the court of appeals' judgment upholding Riley's convictions, but reject the court of appeals' holding that the trial court erred in refusing to submit Riley's multiple assailants instruction to the jury.

## I. Facts and Procedural History

Riley testified that he was shopping at an EZ Market in Aurora in January 2006. He became involved in a verbal confrontation with a female shopper, Nisa Peelman, after Peelman allegedly touched Riley in an inappropriate way. Riley then left the store. Shortly thereafter, Peelman and her brother, Gabriel Velasquez, walked out of the store. Velasquez and Riley exchanged words and a verbal altercation resulted. The two men began physically wrestling when the argument became more hostile. During the tussle, Velasquez told Peelman to "grab the heat from the truck." Riley believed that the term "heat" meant a gun. Riley then pulled out a small knife from his pocket and "swung it" at Velasquez, hitting Velasquez in the neck, but failing to damage any vital structures.

Velasquez told Peelman to "[r]un for [her] life," but she instead walked toward Riley, yelling at him to leave Velasquez alone and come get her instead. Riley tried to stab Peelman with the knife, but only grazed her neck. Peelman testified that Riley also punched her several times in the head and face until she ran away. Riley testified that he fled the scene when he heard Velasquez again tell Peelman "to grab the heat from the truck."

The prosecution charged Riley with attempted second degree murder as to Velasquez, first degree assault as to Velasquez, menacing as to Peelman, attempted second degree assault as to Peelman, and a crime of violence. Riley argued at trial that his actions were justified because he acted in self-defense to fend off both Velasquez and Peelman. He also tendered a jury instruction to the trial court describing self-defense in the context of a multiple assailants situation. The instruction read:

> The totality of the circumstances, including the number of person[s] reasonably appearing to be threatening the defendant, must be considered by the jury in evaluating the reasonableness of the defendant's belief in the necessity of defensive action, and the reasonableness of the force used by him to defend against the apparent danger.

The trial court rejected the instruction. It found that the multiple assailants instruction was unnecessary because the trial court already "told the jury that the defendant has the right to act on appearances" when it gave an instruction regarding apparent necessity. The apparent necessity instruction, Instruction 21, stated:

> When a person has reasonable grounds for believing, and does in fact actually believe, that danger of his being killed or receiving great bodily injury is imminent, he may act on such appearances and defend himself. A person may act on such appearances, even to the extent of taking a human life when necessary, although it may turn out that the appearances were false, or although he may have been mistaken as to the extent of the actual danger.

> Apparent necessity, if well-grounded and of such character as to appeal to a reasonable person under similar conditions and circumstances, as being sufficient to require action, justifies the application of self-defense to the same extent as actual or real danger.

The trial court also instructed the jury on the law of self-defense. The first self-defense instruction related to self-defense as an affirmative defense and is not relevant to our analysis. The second, Instruction 20, provided the pattern law of self-defense in Colorado. It read:

It is an affirmative defense to the crimes of Attempted Second Degree Murder, First Degree Assault, Second Degree Assault Causing Bodily Injury, Menacing, Attempted Second Degree Assault and Attempted Third Degree Assault that the defendant used physical force upon another person

1. In order to defend himself or a third person from what he reasonably believed to be the imminent use of unlawful physical force by the victim, and

2. the defendant used the degree of force which he reasonably believed to be necessary for that purpose.

Self-defense is not an affirmative defense to the crimes of Attempted Manslaughter–Reckless, Attempted Second Degree Assault–Reckless or Third Degree Assault done negligently. However, you may consider the evidence presented on this issue as it relates to the question of whether the defendant acted "recklessly" or with "criminal negligence," as required for the commission of those crimes.

The jury convicted Riley of the lesser included charges of attempted reckless manslaughter against Velasquez, of reckless second degree assault against Velasquez, and of the crime of violence sentence enhancer. It acquitted Riley of all other charges. Riley appealed the convictions to the court of appeals. He argued that the trial court failed to accurately instruct the jury on the law of self-defense in a multiple assailant situation when it rejected Riley's tendered multiple assailants instruction.[1]

The court of appeals held that the trial court erred when it rejected the multiple assailants instruction. *Riley*, 240 P.3d at 339–40. It determined that the pattern jury instruction on self-defense, standing alone, did not accurately state the law of self-defense against multiple assailants because the instruction's phrase "by the victim" limits the jury's self-defense analysis to a single assailant. *Id.* at 339.

The court of appeals went on to conclude, however, that the trial court's perceived error was harmless. *Id.* at 341. It reasoned that the instructions taken as a whole directed the jury to consider the totality of the circumstances, including the multiple assailants. *Id.* at 340. It also held that the apparent necessity instruction appropriately directed the jurors to focus not solely on the actions of a single alleged victim, but rather on whether Riley had reasonable grounds for believing that he was facing imminent danger of death or injury. *Id.* That instruction, the court of appeals found, did not specifically limit the jury to considering only the danger posed by Velasquez. *Id.*

The court of appeals also distinguished this case from *Jones* during its harmless error analysis. *Id.* at 341. It reasoned that "[u]nlike in *Jones,* neither the prosecutor nor the court suggested to the jury that it could not properly take into account defendant's evidence that he had to defend himself against multiple assailants and was entitled to use a degree of force he reasonably believed necessary for that purpose." *Id.*

We granted certiorari to decide whether the court of appeals correctly determined that the trial court did not commit reversible error by rejecting the defendant's tendered instruction concerning multiple assailants.

## II. Standard of Review

The trial court has a duty to instruct the jury on all matters of law applicable to the case. *People v. Garcia,* 28 P.3d 340, 343 (Colo.2001) (citing *Hansen v. State Farm Mut. Auto. Ins. Co.,* 957 P.2d 1380, 1384 (Colo.1998)). An appellate court will review jury instructions de novo to determine whether the instructions accurately informed the jury of the governing law. *People v. Oram,* 217 P.3d 883, 893 (Colo.App.2009), *aff'd,* 255 P.3d 1032 (Colo.2011); *People v. Lucas,* 232 P.3d 155, 162 (Colo.App.2009). A defendant is entitled to an instruction on his theory of defense. *People v. Tippett,* 733 P.2d 1183, 1195 (Colo.1987). It is not error, however, for a trial court to refuse to give a defense theory instruction when the contents

---

**1.** Riley also advanced several other arguments on appeal. The multiple assailants instruction argument, however, is the only theory relevant to our grant of certiorari.

of that instruction are embodied in other instructions given by the trial court. *Id.* We consider all of the instructions given by the trial court together to determine whether they properly informed the jury. *People v. Trujillo,* 83 P.3d 642, 645 (Colo.2004); *Tippett,* 733 P.2d at 1195.

### III. Analysis

We hold that the court of appeals properly affirmed Riley's convictions. We also hold that the court of appeals was incorrect when it found that the trial court erred by rejecting Riley's tendered multiple assailants instruction because the instructions given by the trial court accurately instructed the jury on the law of self-defense in this multiple assailants situation. We first briefly describe the law of self-defense in the multiple assailants context, and then discuss why the jury instructions here were sufficient.

### A. Self–Defense Against Multiple Assailants

■ In general, a person is justified in using physical force to defend himself or a third person from what he "reasonably believes to be the use or imminent use of unlawful physical force" against him by another person. § 18–1–704(1), C.R.S. (2011). The person exercising the right to self-defense "may use a degree of force which he reasonably believes to be necessary for that purpose." *Id.* A defendant may assert self-defense as an affirmative defense to crimes requiring intent, knowledge, or willfulness. *People v. Pickering,* —— P.3d ——, ——, 2011 WL 4014400 (Colo.2011). He may also present evidence of self-defense as an element-negating traverse to cast doubt on charges that he acted recklessly, with extreme indifference, or in a criminally negligent manner. § 18–1–704(4); *Pickering,* —— P.3d at ——.

This Court stated the specific rule governing self-defense against multiple assailants in *People v. Jones.*[2] 675 P.2d at 14. In that case, we found reversible error when the trial court rejected the defendant's tendered self-defense jury instruction. *Id.* The tendered instruction read:

> It is an affirmative defense to the crime of Second Degree Assault that the defendant used the [sic] physical force upon another person:
>
> (1) In order to defend himself or a third person from what he reasonably believed to be the use or imminent use of unlawful physical force by [the principle assailant] *or his associates,* and
>
> (2) He used a degree of force which he reasonably believed to be necessary for that purpose.

*Id.* at 13 (emphasis added).

In rejecting the instruction, the trial court specifically found that the "or his associates" language of Jones's tendered instruction misstated the law of self-defense because Jones's right to self-defense was restricted to a single principle assailant and did not extend to that assailant's associates. *Id.* The trial court then gave a self-defense instruction to the jury that omitted any reference to Jones's right to use force to defend against the actions of the associates. *Id.*

This Court reversed because the trial court's self-defense instruction deprived Jones of the "right to use physical force against [the principle assailant] as a means of repelling the assaultive actions of those who were assisting [the assailant] in attacking [Jones]." *Id.* at 14. Thus, we reasoned, under the given instruction, Jones's fear of physical violence "from others acting in concert with his principle assailant became an irrelevant consideration and thereby vitiated [Jones's] right to act upon reasonable appearances in a multiple assailant attack." *Id.*

We then articulated the general rule, applicable here, that the trier of fact in a self-defense case involving multiple assailants must consider the "totality of the circumstances, including the number of persons reasonably appearing to be threatening the ac-

---

**2.** *Jones* involved second degree assault, a charge to which self-defense is an affirmative defense. 675 P.2d at 13. Although self-defense is not an affirmative defense to the reckless charges relevant to this opinion, we perceive no reason why the reasoning in *Jones* regarding self-defense in a multiple assailants situation should not apply when self-defense is an element-negating traverse.

cused, ... in evaluating the reasonableness of the accused's belief in the necessity of defensive action and the reasonableness of force used by him to repel the apparent danger." *Id.*

## B. The *Jones* Rule

We begin by emphasizing that *Jones* does not require a trial court to give a specific multiple assailants instruction in *every* case involving both multiple assailants and self-defense. The *Jones* opinion does not delineate such a rule, and interpreting the case in that fashion would inappropriately infringe on the discretion trial courts have to tailor jury instructions to fit each unique case. *See People v. Garcia,* 28 P.3d 340, 347 (Colo.2001) (citing *Idrogo v. People,* 818 P.2d 752, 754 (Colo.1991)) (trial court must tailor instructions to the particular circumstances of a given case); *see also, e.g., People v. Pahl,* 169 P.3d 169, 183 (Colo.App.2006) ("[T]he trial court has substantial discretion in formulating the jury instructions so long as they are correct statements of the law and fairly and adequately cover the issues presented.").

■ Instead, *Jones* stands for the principle that a jury must consider the totality of the circumstances, including the number of persons reasonably appearing to be threatening the defendant, (1) when evaluating the reasonableness of the defendant's belief that he needed to use self-defense in the given situation, and (2) when evaluating the reasonableness of the actual force used by the defendant to repel the apparent danger. *See Jones,* 675 P.2d at 14. The purpose of this rule is to ensure that the jury understands that it may consider *all* relevant evidence when assessing the reasonableness of the defendant's actions. Thus, so long as the given instructions properly direct the jury to consider the totality of the circumstances during its deliberations on reasonableness, those instructions will satisfy *Jones.* We now describe why the instructions given in this case accurately apprised the jury of the

law of self-defense in this multiple assailants situation, even without Riley's specific multiple assailants instruction.

## C. The Instructions Satisfy *Jones*

■ Instructions 20 and 21, read together, accurately stated the law of self-defense in this particular multiple assailants situation because they described the law of self-defense in relation to crimes requiring recklessness, and broadly provided that the jury should consider the totality of the circumstances when evaluating the reasonableness of the defendant's actions. The court of appeals erred by reading Instruction 20 in isolation, rather than with Instruction 21, during its initial analysis. *See Trujillo,* 83 P.3d at 645; *Tippett,* 733 P.2d at 1195 (appellate court must consider all of the instructions given by the trial court together to determine whether they properly informed the jury).

To start, Instruction 20 properly provided the law of self-defense for crimes requiring recklessness because it tracked the language of the self-defense statute.[3] *See* §§ 18–1–704(1), (4); *see also Idrogo,* 818 P.2d at 754 (citing *Vigil v. People,* 143 Colo. 328, 353 P.2d 82 (1960)) (an instruction couched in terms of the language of the statute is proper). Instruction 20 also accurately defined self-defense in terms of the reasonableness of Riley's belief that he faced the imminent use of physical force against him, and the reasonableness of his belief that he used the degree of force which was necessary for protection. It thus appropriately reflected the principle, stated by this Court in *Jones,* that "reasonable belief" is the "touchstone of self-defense." *Jones,* 675 P.2d at 13; *see also Beckett v. People,* 800 P.2d 74, 78 (Colo.1990) (emphasizing that reasonable belief is the touchstone of self-defense to analyze single-assailant self-defense instruction where the defense's theory did not clearly encompass multiple assailants).[4]

---

3. We need not determine whether the jury instructions accurately stated the law of self-defense as an affirmative defense because Riley was acquitted of all charges to which such a determination would apply.

4. The self-defense jury instruction in *Beckett* stated:

It is an affirmative defense to the crime of felony menacing that the defendant threatened force upon another person:

In addition to Instruction 20's appropriate description of self-defense in the reckless crime context, Instruction 21 broadly directed the jury to consider the totality of the circumstances, including the number of persons reasonably appearing to be threatening the accused, when assessing the reasonableness of Riley's defensive actions. *See Jones,* 675 P.2d at 14. Instruction 21 stated in the relevant part that "[a]pparent necessity, if well-grounded and of such character as to appeal to a *reasonable person under similar conditions and circumstances,* as being sufficient to require action, justifies the application of self-defense to the same extent as actual or real danger." (Emphasis added).

This broad language—"reasonable person under similar conditions and circumstances"—accurately informed the jury that it should consider the "totality of the circumstances, including the number of persons reasonably appearing to be threatening the accused" and thus satisfied the *Jones* requirement. Instruction 21 additionally instructed the jury to consider the reasonableness of Riley's actions in light of the surrounding circumstances because it refers to self-defense—a concept which Instruction 20 properly described as a reasonableness inquiry. Furthermore, unlike the trial court in *Jones,* the trial court in this case appropriately recognized that Instruction 21 informed the jury that the "defendant has the right to act on appearances," without limiting the scope of those "appearances" to a single assailant.[5] *See Jones,* 675 P.2d at 13.

Instructions 20 and 21 are therefore sufficient under the *Jones* rule because, read together, they properly define self-defense in the recklessness context and are broad enough to encompass Riley's multiple assailants theory of defense. The trial court was therefore correct when it refused to submit Riley's multiple assailants instruction to the jury because Instructions 20 and 21 already embodied that theory.[6]

## IV. Conclusion

For the foregoing reasons, we hold that the jury instructions as a whole accurately stated the law of Riley's theory that he acted in self-defense against Peelman and Velasquez. We therefore reverse the court of appeals' holding that the trial court erred when it rejected Riley's tendered multiple assailants instruction because the given instructions embodied Riley's theory. We affirm the court of appeals' decision to the extent that it upholds Riley's convictions for attempted reckless manslaughter against Velasquez, for reckless second degree assault against Velasquez, and for the crime of violence sentence enhancer.

Justice COATS concurs in the judgment only.

Chief Justice BENDER dissents, and Justice MÁRQUEZ joins in the dissent.

Justice COATS, concurring in the judgment only.

While I would also affirm the defendant's convictions in this case, I do not join the majority opinion, largely because I believe it, like the court of appeals below, both misreads our holding in *People v. Jones,* 675 P.2d 9 (Colo.1984), and fails to fully appreciate the import of our subsequent holding in *Beckett v. People,* 800 P.2d 74 (Colo.1990). Because I fear the majority may inadvertent-

---

1. in order to defend himself from what he *reasonably believed* to be the use or imminent use of unlawful physical force by Mr. Cirillo; and
2. he threatened to use a degree of force which he *reasonably believed* to be necessary for that purpose.
800 P.2d at 78 (emphasis in original).

**5.** We additionally note that the use of the word "victim" in Instruction 20's description of the person against whom a defendant employs self-defense did not, as the court of appeals found, limit the jury's consideration of the defensive action to a single alleged assailant because "the

singular includes the plural" when interpreting statutory language. § 2–4–102, C.R.S. (2011); *Jones,* 675 P.2d at 14 n. 10.

**6.** Because we find that the self-defense and apparent necessity instructions given in this case adequately apprised the jury of Riley's claim of self-defense against multiple assailants, we need not address the court of appeals' rejection of the argument that *Beckett* altered the holding of *Jones* such that a self-defense instruction, standing alone, would be sufficient. *Riley,* 240 P.3d at 339.

ly revive a debate about instructing on reasonable appearances, seemingly laid to rest in this jurisdiction more than twenty years ago, I write separately to express my views.

Rather than finding the defendant's tendered instruction to be a misleading statement of the law or finding Instruction No. 20, defining self-defense in the language of section 18–1–704, C.R.S. (2011), to adequately apprise the jury, by itself, of the law governing self-defense, the majority apparently concludes that the defendant's proposed instruction was properly denied only because the statutory definition of self-defense was supplemented in this case by a separate apparent necessity instruction. In *Beckett*, which also involved multiple assailants, we addressed this question head-on and held that instructing in the "reasonably believed" language of the current statutory defense adequately apprises a jury of its obligation to consider "the totality of circumstances ... in evaluating the reasonableness of the accused's belief in the necessity of defensive action," *id.* at 78 (quoting *Jones*, 675 P.2d at 14); and consequently we found the separate apparent necessity instruction required by our pre-statute case law to be superfluous, *id.* In light of our holding in *Beckett*, I fail to see how giving an additional apparent necessity instruction could have enhanced the jury's understanding of the law of self-defense in any manner whatsoever.

Were I to believe, as apparently the majority does, that the defendant was entitled to have the jury separately admonished to assess the reasonableness of the defendant's conduct in light of the number of persons reasonably appearing to threaten him, I would be forced to conclude that the instructions in this case were inadequate. Because, however, I consider it clear that our holding in *Beckett* disavowed any obligation to supplement the statutory self-defense language with an additional instruction concerning reasonable appearances, including any specific direction with regard to the number of apparent assailants, I would find Instruction No. 20 in this case adequate in itself to apprise the jury of the law governing self-defense.

In *Jones* we were faced with the question whether the trial court misconstrued the statute defining self-defense to prohibit the defendant from using physical force against the victim "as a means of repelling the assaultive actions of those who were assisting him in attacking the defendant." 675 P.2d at 14. In that case, where there was testimony that the defendant was struggling with several indistinguishable men at the same time, we found that the trial court "vitiated the defendant's right to act upon reasonable appearances in a multiple assailant attack" by instructing in such a way as to effectively render irrelevant "the defendant's apprehension of physical violence from others acting in concert with his principal assailant." *Id.*

In *Jones*, we clearly did not hold that a defendant is justified in using increased force against one assailant simply because he is under attack from others as well, and such a proposition could not have been harmonized with the statutory language defining the defense. In fact, we expressly couched our rationale in terms of apparent necessity and held only that a defendant's right to act on reasonable appearances in defending himself entitles him to use the degree of force that appears necessary under the circumstances, including the fact that the danger presented by his victim may appear to be enhanced by concerted action. Although we noted in *Jones* that the defendant's proffered theory-of-the-case instruction was overly broad in failing to limit the jury's consideration to others who "the defendant reasonably believed were acting in concert with [the victim] in the use or imminent use of unlawful physical force against [him]," *id.* at 14 n. 11, we found his proffer sufficient to implicate the court's duty to help draft an acceptable theory-of-the-case instruction, *see People v. Moya*, 182 Colo. 290, 292–93, 512 P.2d 1155, 1156 (1973).

Unlike in *Jones*, the tendered instruction in *Beckett* made no attempt to explain the defendant's right of self-defense in terms of what the defendant reasonably believed to be the imminent use of unlawful physical force by his particular victim or his victim's "associates." *Jones*, 675 P.2d at 13. Instead, *Beckett* dealt with "an amplifying self-de-

fense instruction concerning 'apparent necessity,'" 800 P.2d at 75, and made clear that nothing beyond the words of the self-defense statute was required, *id.* at 78. In *Beckett,* we clearly did not understand *Jones* to sanction, much less mandate, such an "amplifying self-defense instruction" for cases involving multiple assailants, and our holding in that case left no room for such a requirement in any event.

As in *Beckett,* the tendered instruction at issue in the case now before us made no attempt to explain the defendant's theory of the case by relating the circumstances as he perceived them to be to the law of self-defense. Rather, it merely paraphrased a portion of our rationale in *Jones,* which was never offered or intended as appropriate language for a jury instruction. *See People v. Riley,* 708 P.2d 1359, 1366 (Colo.1985)(cautioning courts about the danger of taking abstract statements from appellate court opinions and formulating instructions of law based thereon); *see also Denver Tramway Corp. v. Kuttner,* 95 Colo. 312, 318, 35 P.2d 852, 854 (1934). In addition to suffering from the same defect as the instruction in *Jones,* failing as it did to limit the jury's consideration to others who not only appeared to threaten the defendant but whom the defendant reasonably believed to be acting in concert with the victim, the tendered instruction was clearly phrased as an instruction of law, amplifying the statutory definition of self-defense itself. Finally, unlike *Jones,* where the trial court deprived the defendant of the right to act on reasonable appearances by ruling that he was entitled to use force against the victim only in response to the imminent use of unlawful force by the victim alone, the trial court in this case rejected the defendant's tendered instruction solely as duplicative and amounting to a comment on the evidence, and it made clear to defense counsel the appropriateness of further explanation by him in argument to the jury.

Whether a defendant is entitled to an instruction explaining his theory in terms of his perceived need to use physical force against the victim, at least in part, to defend himself from concerted action of the victim and others must remain a matter for the trial court based on the evidence of each case. I believe it to be clearly established, however, that nothing beyond a self-defense instruction couched in the language of the statute is required to fully apprise the jury of the defendant's right to act on reasonable appearances.

I therefore concur in the judgment of the court.

Chief Justice BENDER, dissenting.

Despite the evidence that Riley was involved in an altercation with two people when he stabbed one and attempted to stab another, the majority holds that the trial court did not err when it rejected Riley's multiple assailants instruction. The record shows that while Riley was physically tussling with one assailant who told the other assailant to "grab the heat from the truck," Riley pulled a small knife, cutting one assailant in the neck. He then unsuccessfully attempted to stab the other assailant. Riley claimed he acted in self-defense and requested a multiple assailants instruction as one of the instructions defining self-defense. The majority affirms the trial court's refusal to give Riley's instruction on multiple assailants. I disagree and therefore respectfully dissent.

Self-defense in this case represented Riley's theory of defense—functioning as an affirmative defense to some charges and contesting the culpable mental state for the other crimes for which Riley was ultimately convicted. The majority fails to follow our precedent in *People v. Jones,* 675 P.2d 9 (Colo.1984). In *Jones,* we held that where self-defense has been raised, "the totality of the circumstances, including the number of persons reasonably appearing to be threatening the accused, must be considered by the trier of fact in evaluating the reasonableness of the accused's belief in the necessity of defensive action and the reasonableness of the force used by him to repel the apparent danger." *Id.* at 14. Failure to embody this significant legal principle in the instructions in this case constitutes reversible error.

An instruction articulating the defendant's theory of the case must be given by the trial court, provided it has record support and

does not duplicate one of the trial court's other instructions. *People v. Nunez*, 841 P.2d 261, 264 (Colo.1992). Failure to give a jury instruction on a defendant's theory of the case may constitute reversible error. *Id.* at 266. Here, the trial court gave a self-defense instruction which referred to "the victim" in the singular. When there are multiple assailants involved, a pattern jury instruction such as this, standing alone, is not sufficient to comply with *Jones*. *See People v. Manzanares*, 942 P.2d 1235, 1240 (Colo. App.1996) (holding that, under *Jones*, in a case where multiple people were involved in a confrontation, a pattern self-defense instruction referencing "the victim" in the singular, "standing alone, was not sufficient"). As has been the law since 1996, an additional instruction is necessary to direct the trier of fact that it must consider the totality of the circumstances, including the number of persons threatening the defendant. *See id.* (holding that the pattern self-defense instruction, standing alone, was insufficient, but when read in conjunction with a totality of the circumstances instruction, the instructions sufficiently communicated the law of self-defense to the jury); *see also People v. Cuevas*, 740 P.2d 25, 27 (Colo.App.1987) (holding that the self-defense jury instruction should be "more clearly stated on retrial in order to address the fact that multiple assailants were involved").[1]

The majority holds that the "apparent necessity" instruction given by the trial court was sufficient to satisfy the requirement of *Jones* that the jury be instructed to consider the number of persons appearing to threaten the accused. Maj. op. at 1095. The majority concludes that the language in the apparent necessity instruction that the "defendant has the right to act on appearances" and that the jury should consider a "reasonable person

under similar conditions and circumstances" is broad enough to encompass Riley's multiple assailants theory. *Id.* at 15. In my view, this vague wording about "appearances" and "similar conditions and circumstances" does not satisfy the mandate of *Jones* that the jury be specifically instructed to consider "the totality of the circumstances, *including the number of persons reasonably appearing to be threatening the accused.*" *Jones*, 675 P.2d at 14 (emphasis added). The purpose of an "apparent necessity" instruction is not to inform the jury that they are to consider the number of assailants, but to inform the jury that the touchstone of self-defense is reasonable belief, rather than absolute certainty. *Id.* at 13.

Additionally, I believe the majority misreads *Jones* by holding that the use of the word "victim" in the singular does not limit the jury's consideration to a single alleged assailant. Maj. op. at 1095 n. 5. The majority reaches this holding based on the footnote in *Jones* that states "the singular includes the plural." *Id.* However, this statement in *Jones* was quoting section 2–4–102, C.R.S. (2011), which deals with the construction of statutes. We rejected the prosecutor's argument in *Jones* that the defendant was not entitled to an instruction on multiple assailants because the self-defense statute used the singular, and not the plural, reiterating the rule of statutory construction in section 2–4–102 that in interpreting statutes, the singular includes the plural. *Jones*, 675 P.2d at 14 n. 10. *Jones* does not conflate this rule of statutory construction with the law on jury instructions.

In my view, the self-defense instructions in this case using only the singular failed to explain the law of self-defense fully, effectively depriving Riley of a fair consideration of

---

1. In my view, *Beckett v. People*, 800 P.2d 74 (Colo.1990), has no bearing on this case. In *Beckett*, we granted certiorari to review whether the trial court erred by refusing Beckett's tendered apparent necessity instruction and to determine whether self-defense is a defense to a charge of prohibited use of weapons. *Id.* at 75 & n. 1. We held that an "apparent necessity" jury instruction was no longer necessary in light of the changes to the self-defense statute to include "reasonable belief" language. Because we concluded that the trial court properly instructed the

jury on the defendant's self-defense claim, and the jury found the defendant did not satisfy the requirements of self-defense, we did not reach the second issue of whether self-defense was a defense to the prohibited use of weapons. Although multiple assailants were involved in the situation in *Beckett*, the issue of a multiple assailants instruction was not before us, and we did not discuss it in our holding or in dicta. Hence, I look to Colorado precedent that directly reviews multiple assailant instructions, such as *Jones, Manzanares*, and *Cuevas*.

his theories of defense. Without a specific instruction that it must consider multiple assailants, the jury could have easily interpreted the jury instructions phrased only in the singular to mean that it could only consider the actions of one assailant. Hence, I respectfully dissent.

I am authorized to state that Justice MÁRQUEZ joins in this dissent.