22CA1509 Peo v Villegas-Ortega 06-05-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1509
City and County of Denver District Court No. 20CR3893
Honorable Brian R. Whitney, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Oscar D. Villegas-Ortega,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE GROVE
Fox and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 5, 2025

Philip J. Weiser, Attorney General, Austin R. Johnston, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Law Office of Mark Burton, P.C., K. Mark Burton, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Oscar D. Villegas-Ortega, appeals his judgment of conviction upon a jury verdict finding him guilty of murder in the first degree (extreme indifference), first degree assault (deadly weapon), and reckless manslaughter.  We reverse and remand the case for a new trial.

## I.     Background

¶ 2     Based on the evidence presented at trial, a jury could find the following facts.

¶ 3     Villegas-Ortega attended a birthday party for the one-year-old daughter of his cousin, Karina Lujan, at a restaurant near downtown Denver.  The party was also attended by Edward Armenta, Lujan's ex-boyfriend and the one-year-old's father.

¶ 4     Around fifty friends and family attended the party, which had a band, a DJ, and an open bar, and lasted from three p.m. until midnight.

¶ 5     At one point, Villegas-Ortega danced with Lujan, his cousin, and Armenta noticed.  After the dance, Armenta and his friends confronted Villegas-Ortega and told him he should not be dancing with Lujan.  After a few additional interactions, Villegas-Ortega's father signaled to his son that they should leave the party because

Armenta and his friends were "trying to start stuff." (For his part, Armenta denied the dance upset him or his friends or caused any confrontation. He claimed that it was instead Villegas-Ortega who "wasn't happy.")

¶ 6     A number of men — Villegas-Ortega, his father, Armenta, Armenta's brother, his friend Fausto Martinez, and others — ended up outside the front of the restaurant, where a melee broke out. Villegas-Ortega, who testified at trial, said he and his father were surrounded when he saw someone "about to pull out a gun, so I pulled my gun out." More fighting ensued, shots were fired, and someone brandished a knife. Martinez was fatally shot and Armenta and his brother suffered knife wounds.

¶ 7     As relevant to this appeal, the prosecution charged Villegas-Ortega with the first degree murder of Martinez under two theories — (1) after deliberation and (2) extreme indifference. Later, it amended the complaint to add counts of second degree assault, naming Armenta as the victim, and first degree assault, naming Armenta's brother as the victim. After a trial, at which Villegas-Ortega maintained that he acted in self-defense, the jury found Villegas-Ortega guilty of extreme indifference murder, reckless

2

manslaughter (which was submitted to the jury as a lesser included offense to the charge of first degree murder after deliberation), and first degree assault. The jury acquitted Villegas-Ortega of first degree murder after deliberation, the lesser included offense of second degree murder, and second degree assault. The trial court sentenced Villegas-Ortega to a controlling sentence of life in prison without parole. This appeal followed.

## II.     Jury Instructions

¶ 8      Because numerous people were involved in the fight, Villegas-Ortega contends that the court reversibly erred when it rejected a defense-tendered jury instruction that would have explicitly directed the jury to consider the totality of the circumstances when evaluating his claim of self-defense. He also argues that the trial court plainly erred when, part way through deliberations, it instructed the jury that it should consider the totality of the circumstances with respect to first degree murder after deliberation and the lesser included second degree murder charge while failing to apply that supplemental instruction to the charges of extreme

indifference murder, reckless manslaughter, and first degree assault. We agree that reversal is required.[1]

A.      Standard of Review and Applicable Law

¶ 9      We review jury instructions de novo to determine whether the instructions accurately informed the jury of the governing law. *Riley v. People*, 266 P.3d 1089, 1092 (Colo. 2011). When defense counsel fails to object, we review the issue for plain error. *Hagos v. People*, 2012 CO 63, ¶ 14. We reverse if the error "so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction." *People v. Miller,* 113 P.3d 743, 750 (Colo. 2005) (quoting *People v. Sepulveda*, 65 P.3d 1002, 1006 (Colo. 2003)). As applied to jury instructions, the defendant must demonstrate not only that the instruction affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to his conviction. *Id.*

---

[1] Because it is unlikely to arise in the same manner on retrial, we do not reach Villegas-Ortega's unrelated contention that the court allowed the prosecution to improperly impeach him as to whether he was allowed to possess a firearm. If it does arise, the trial court retains discretion to rule under those circumstances. *See People v. Davis*, 312 P.3d 193, 196-97 (Colo. App. 2010), *aff'd*, 2013 CO 57.

¶ 10    The trial court has a duty to instruct the jury on all matters of law applicable to the case. *People v. Garcia*, 28 P.3d 340, 343 (Colo. 2001) (citing *Hansen v. State Farm Mut. Auto. Ins. Co.*, 957 P.2d 1380, 1384 (Colo. 1998)). A defendant is entitled to an instruction on his theory of defense. *People v. Tippett*, 733 P.2d 1183, 1195 (Colo. 1987). It is not error, however, for a trial court to refuse to give a defense theory instruction when the contents of that instruction are embodied in other instructions given by the trial court. *Id.* We consider all the instructions given by the trial court together to determine whether they properly informed the jury. *People v. Trujillo*, 83 P.3d 642, 645 (Colo. 2004); *Tippett*, 733 P.2d at 1195.

## B.    Additional Facts

¶ 11    The defense's theory of the case was that Villegas-Ortega acted in self-defense. Before trial, counsel tendered two jury instructions regarding self-defense in a multiple assailants situation.

¶ 12    The first proposed instruction (the apparent necessity instruction) stated:

> It is fundamental that the law of self-defense,
> which is emphatically a law of necessity,
> involves the question of one's right to act upon

appearances, even though such appearances may prove to have been deceptive. Apparent necessity, if well grounded and of such a character as to appeal to a reasonable person, under like conditions and circumstances, as being sufficient to require action, justifies the application of the doctrine of self-defense to the same extent as actual or real necessity.

The prosecutor objected to the instruction, arguing that the instructions "as a whole will cover this apparent necessity issue and defense can argue it in closing." The court agreed and rejected the instruction, explaining that

I'll be honest with you. I — I find that instruction confusing. It is the law, I will give it that, and I will allow you to argue that to the point where you can say that apparent necessity is — I don't know, I — Basically what you're saying is don't look at this in retrospect; look at it as if you were — It's so close to the Golden Rule, but that's why I'm worried about it, so I — I think I can allow it to be argued but I'm not going to put it in as an instruction of the Court.

¶ 13    The second proposed instruction (the totality of circumstances instruction) read as follows:

The totality of circumstances, including the number of persons reasonably appearing to be threatening the accused, must be considered by the trier of fact in evaluating the reasonableness of the accused's belief in the necessity of defensive action and the

6

> reasonableness of force used by him to repel
> the apparent danger.

The court rejected this instruction as well, ruling that "pointing [the jury] directly at only one thing" would be confusing in light of the fact that the jury would necessarily have to consider the totality of the circumstances when it decided whether to apply the provocation exception to the affirmative defense of self-defense and when it determined the "reasonableness" of Villegas-Ortega's actions.

¶ 14　At the close of trial, the court instructed the jury on the affirmative defense of self-defense with respect to the offenses requiring a mental state of "intentional" or "knowing," and it provided similar instructions on "the question of self-defense" for the offenses requiring a mental state of "extreme indifference" or "recklessness." *See People v. Pickering*, 276 P.3d 553, 555-57 (Colo. 2011). The language differed slightly between these categories of offenses because some of the instructions identified an affirmative defense and others described an element-negating traverse. Nonetheless, each of the self-defense instructions provided that under certain circumstances a person may use deadly physical force against another person without first retreating if he does so in

order to defend himself from what he reasonably believes to be the use or imminent use of unlawful physical force "by that other person."

¶ 15    The instructional reference to "that other person" — in the singular — prompted a question from the jury during deliberations: "Does the use of the phrase 'that other person' (per [Instruction No. ]6, line 1) necessitate that the other person was the deceased (Fausto Martinez) to justify or warrant self-defense?" (Instruction No. 6 set forth the affirmative defense of self-defense specific to the charges of first degree murder after deliberation and second degree murder.)

¶ 16    The trial court agreed that Instruction No. 6 contained an "incorrect statement of law," and that it should have stated that someone other than the person who was shot could be the one using or imminently using unlawful physical force. After reviewing the model jury instructions, the prosecutor suggested that the court could "cure" the instruction's failure to reference the totality of the circumstances by adding "or by persons acting in concert with that other person" to the instruction. Defense counsel pointed out that she had "originally tendered a totality of the circumstances

instruction" to the court and "maintained that that's an appropriate instruction." But she agreed with the answer that the court proposed, which read as follows:

> In addition to Instruction 6, Paragraph 1, you are to consider the totality of circumstances, including the number of persons reasonably appearing to be threatening the defendant.
>
> "You should also insert the following after person in Paragraph 1
>
> "or by persons acting in concert with that other person[.]"

¶ 17    Thus, as edited by the court's response to the jury's question, Instruction No. 6 would have read in pertinent part:

> The defendant was legally authorized to use deadly physical force upon another without first retreating if:
>
> 1.  he used that deadly physical force in order to defend himself from what he reasonably believed to be the use or imminent use of unlawful physical force by that other person, *or by persons acting in concert with that other person.*

(Emphasis added.)

¶ 18    However, while the court corrected Instruction No. 6, no one recognized that the "other person" language was also missing from

the other instructions addressing self-defense — whether as an affirmative defense or a traverse. As a result, not only did the instructions as a whole lack a general "totality of the circumstances" or "apparent necessity" instruction (or any other language to that effect), but the instructions addressing Villegas-Ortega's claim of self-defense with respect to extreme indifference murder, reckless manslaughter, and first degree assault failed to direct the jurors that they could consider "persons acting in concert" with the victim. The jury acquitted Villegas-Ortega of first degree murder after deliberation and second degree murder, and it found him guilty of extreme indifference murder, first degree assault, and reckless manslaughter. (The jury also acquitted Villegas-Ortega of the second degree assault charge.)

## C.    Analysis

¶ 19    *Riley* indicated that a jury must consider the totality of the circumstances when evaluating a defendant's claim of self-defense in a case involving multiple assailants. 266 P.3d at 1094 (holding that *People v. Jones*, 675 P.2d 9, 14 (Colo. 1984), "stands for the principle that a jury must consider the totality of the circumstances, including the number of persons reasonably

appearing to be threatening the defendant," when evaluating a claim of self-defense).  But the supreme court in *Riley* said that trial courts have discretion in how they convey that concept to the jury.  *Id.*  Thus, the *Riley* court declined to mandate specific language for courts to use when instructing a jury that it must take the totality of the circumstances into account in a multiple assailants case.  *Id.* at 1094-95.

¶ 20    Harking back to *Jones*, Villegas-Ortega argues that "[f]or decades, Colorado law has required a totality of the circumstances instruction in a multiple assailant self-defense case."  *Riley* holds otherwise, stating that, irrespective of which specific instructions are provided, "so long as the given instructions properly direct the jury to consider the totality of the circumstances during its deliberations on reasonableness, those instructions will satisfy *Jones*."  266 P.3d at 1094.  But satisfying the *Jones* rule in a multiple assailants case requires more than generic instructions to the jury directing it to consider all of the evidence presented at trial.  *See id.* at 1095 (holding that an "apparent necessity" instruction satisfied the *Jones* rule because it "accurately informed the jury that it should consider the 'totality of the circumstances, including

11

the number of persons reasonably appearing to be threatening the accused'") (citation omitted).

¶ 21     We are thus not convinced by the People's argument that the jury was adequately instructed simply because it was told to assess the "reasonableness" of Villegas-Ortega's self-defense claim and directed generally to consider "all of the testimony given," "all facts and circumstances shown by the evidence" and "all of the evidence." While *Beckett v. People*, 800 P.2d 74, 77-78 (Colo. 1990), cited in the People's answer brief, could be read to suggest such a result, "*Jones* — as explicitly modified by *Riley* — remains good law" and requires the court to instruct the jury that it must consider the totality of the circumstances. *People v. Roberts-Bicking*, 2021 COA 12, ¶ 25.

¶ 22     The circumstances in this case are strikingly similar to *Roberts-Bicking*, although the trial court's response to the jury's question here requires us to reach a different result.  In *Roberts-Bicking*, the district court rejected defense-tendered "apparent necessity" and "totality of the circumstances" instructions, ruling instead that the stock self-defense instruction — which included the same reference to "that other person" that triggered the jury's

question in this case — was adequate. *Id.* at ¶ 15. In response to a jury question about the meaning of "reasonable," the court told the jurors to "apply an objective standard" and emphasized that, "[i]n making this determination, you are to consider the totality of the circumstances shown by the evidence." *Id.* at ¶ 16. The court's response to the jury question resolved any inadequacies with the initial instructions, the division held, because it directed the jury to "consider the reasonableness of the defendant's beliefs and actions under the totality of the circumstances." *Id.* at ¶ 28.

¶ 23 The trial court here rejected the same defense-tendered instructions as in *Roberts-Bicking*, and the jury likewise asked a question that led the court and counsel to realize that the instructions were not broad enough to encompass Villegas-Ortega's multiple assailants theory of defense. *See Riley*, 266 P.3d at 1095. So far, so good, and consistent with *Roberts-Bicking*, the trial court could have resolved this issue by instructing the jurors *generally* that they had to consider the totality of the circumstances when assessing self-defense. But the court did not provide a general instruction; instead, it limited the scope of its response to Instruction No. 6, which outlined the affirmative defense of self-

13

defense only for the charges of first degree murder after deliberation and second degree murder. While it is true that the court's response addressed the question that the jury asked, the response failed to address the broader issue that the question implicated and, therefore, leaves us with serious doubts about the soundness of the jury's verdict on the other charges that involved a claim of self-defense.

¶ 24 When we look to the instructions as a whole, as modified by the court's response to the jury's question, it quickly becomes plain why reversal is required. By submitting its mid-deliberation question, the jury sought clarification on the scope of its "reasonableness" inquiry. In other words, the question showed that, when determining if Villegas-Ortega reasonably acted in self-defense, the jurors were unsure as to whether they should consider the threat or potential threat posed by all the assailants or only the shooting victim, Martinez. And even though the question referenced only one particular instruction, the uncertainty that underpinned it applied equally to every charge that potentially involved self-defense. *See Riley*, 266 P.3d at 1093 n.2 (observing that the jurors evaluating a claim of self-defense must consider the

totality of the circumstances regardless of whether the self-defense claim is an affirmative defense or an element-negating traverse).

¶ 25     Thus, by cabining its response only to the question asked — i.e., by failing to remedy the omission of any requirement that the jury consider the totality of the circumstances with respect to self-defense generally — the court's answer could have only added to the jury's confusion. *See Cassels v. People*, 92 P.3d 951, 958 (Colo. 2004) (explaining that a trial court must tailor the self-defense instruction in light of the particular facts of the case). Following the court's instructions to the letter, as we must presume the jurors did, *see Johnson v. People*, 2019 CO 17, ¶ 16, would have led the jurors to two disparate approaches depending on the charge under consideration. For the charges of first degree murder after deliberation and second degree murder, the jurors would have considered the totality of the circumstances, including the threat posed by multiple assailants, when evaluating the affirmative defense of self-defense. But for extreme indifference murder, reckless manslaughter, and first degree assault, the jury *would not* have considered the totality of the circumstances, but instead only

the threat posed by "that other person" as provided in the self-defense instructions associated with those charges.

¶ 26     The error that led to this inconsistency was obvious because the jury's question implicated language that was shared by every one of the self-defense instructions, and the fact that the jury asked the question should have highlighted this fact for the court.  *Cf. People v. Bachofer*, 192 P.3d 454, 463 (Colo. App. 2008) (holding that contradictory self-defense instructions are "plainly wrong"). Moreover, the error involves a substantial right — the right of a defendant to assert self-defense — and it seriously undermines our confidence in the guilty verdict.  Indeed, the jury acquitted Villegas-Ortega of the two offenses for which the court correctly instructed the jury to consider the totality of the circumstances when considering self-defense, and it found him guilty of three of the four offenses that lacked this clarification.  While we are unable to reconstruct the jury's precise reasoning, the fact that the jury reached these verdicts while applying inconsistent self-defense instructions casts serious doubt on Villegas-Ortega's convictions. Under these circumstances, we conclude that reversal is required.

16

## III.  Disposition

¶ 27    We reverse Villegas-Ortega's convictions for extreme indifference murder, first degree assault, and reckless manslaughter, and remand the case for a new trial.

JUDGE FOX and JUDGE JOHNSON concur.