The PEOPLE of the State of
Colorado, Petitioner,

v.

Glen Stephen FULLER, Respondent.

No. 88SC81.

Supreme Court of Colorado,
En Banc.

Oct. 23, 1989.

Duane Woodard, Atty. Gen., and Charles B. Howe, Chief Deputy Atty. Gen., Denver, and Charles B. McCrory, Sp. Asst. Atty. Gen., Office of the Dist. Atty., Aspen, for petitioner.

John Van Ness, Aspen, for respondent.

Justice LOHR delivered the Opinion of the Court.

The issue in this case is whether the defendant, who was accused of resisting arrest and attempting to disarm a peace officer, was entitled to jury instructions on self-defense. The district court denied the defendant's request for such instructions because defense counsel did not submit properly drafted instructions and because the court concluded that there was no evidence that the police officers had resorted to unreasonable or excessive force so that the defendant would have had a right to defend himself. The Colorado Court of Appeals reversed the judgment and remanded the case for a new trial, holding that some evidence supported the defendant's theory and the trial court was required to incorporate the substance of the defendant's self-defense theory into the instructions. *People v. Fuller,* 756 P.2d 390 (Colo.App.1987). We granted certiorari to review the court of appeals' decision. We now affirm in part and reverse in part.

## I.

The defendant, Glen Stephen Fuller, was initially involved in a disturbance at a restaurant in Basalt, Colorado. Dissatisfied with the restaurant's food, he allegedly threw things about the restaurant and at the cook. The defendant and two friends who were with him at the restaurant left and drove to their home in Pitkin County outside of Basalt. Soon afterwards, six law enforcement officers from the Basalt Police Department and the Pitkin County Sheriff's Department arrived at the house. The officers surrounded the building, drew guns and used a public address system to command the occupants to come outside. One of the defendant's friends came out of the house and was told by an officer to get on his knees and clasp his hands behind his head. An officer then tried to handcuff him and a struggle ensued. After several minutes, three officers were able to subdue and arrest him.

While this struggle was occurring outside, other officers saw the defendant inside the house. Two officers, one carrying a shotgun and one holding a revolver, ran to the house, attempted to kick in the door and then entered.

When the officers entered the house, the defendant was leaning against a couch holding his dog, a 125–pound Akita, by the collar. The officers faced the defendant with guns drawn. They ordered the defendant to come outside with them, but he asserted loudly that the officers needed a warrant and refused to come. The prosecution witnesses testified that during the standoff the dog did not seem vicious and seemed to want to get away from the confrontation. One police officer testified that he did not feel threatened by the dog. On the other hand, the defendant testified that his dog was "going crazy" and had to be restrained from attacking the police officers.

At some point while the officers had their guns leveled at the defendant, the defendant either reached for or swatted at the officers' guns. The officers testified that after the defendant lunged at them and grabbed for their guns, officers both inside and outside the house shouted "shoot the dog." The defendant testified that he heard an officer yell "shoot" and "shoot the dog" first and then he tried to swat aside the officers' weapons. He testified that he feared the officers would shoot him in an attempt to shoot the dog, which was standing between his legs.

Prosecution and defense witnesses agreed that the atmosphere at the scene of the arrest was loud and somewhat con-

fused. Those inside the house could hear and see the struggle going on outside. Police officers, the defendant and the defendant's friend were shouting and the defendant's dog was barking.

After an officer with whom the defendant was acquainted interceded, the defendant was taken into custody without gunfire. He was charged with second-degree assault, § 18–3–203(1)(c), 8B C.R.S. (1986), criminal mischief, § 18–4–501, 8B C.R.S. (1986), resisting arrest, § 18–8–103(1)(a), 8B C.R.S.(1986), and two counts of attempting to disarm a peace officer, §§ 18–2–101 and 18–8–116, 8B C.R.S.(1986). The defendant was tried to a jury and convicted of criminal mischief, resisting arrest and one count of attempting to disarm a peace officer.

At the conclusion of both sides of the case, the defendant offered the following jury instruction:

> If a peace officer is resorting to unreasonable or excessive force, it is an affirmative defense to the crimes of Second Degree Assault of a Peace Officer, Attempt, and Resisting Arrest that the defendant used physical force upon a peace officer
> 1. in order to defend himself or a third person from what he reasonably believed to be the use or imminent use of unlawful physical force by the victim, and
> 2. he used a degree of force which he reasonably believed to be necessary for that purpose.

The trial court refused to submit this instruction, or one incorporating its substance, to the jury. The trial court first explained that the defense counsel had not submitted appropriate instructions in a timely manner and then concluded that "[t]here is no evidence to support the giving of the instruction on self-defense, ... at the time [the defendant] was told he was under arrest, there simply had been no excessive force."

The defendant appealed to the court of appeals, which reversed the judgment of the district court and remanded the case for a new trial. The court of appeals concluded:

> [S]ince defendant's testimony constituted some evidence in support of his theory that the officers used, or were about to use, excessive force, and that he was entitled to assert self-defense, it was reversible error for the trial court to refuse to give the requested instruction.

756 P.2d at 391. It also concluded that the defendant's failure to submit properly prepared instructions in a timely fashion was not a ground to refuse to instruct the jury as to self-defense.

We granted the People's petition for certiorari to consider whether the court of appeals ruled correctly that a self-defense instruction was required.

## II.

The People argue that an instruction regarding self-defense is warranted only if excessive force is actually used and not, as the court of appeals suggests, when it is merely imminent. The People argue that the record contains no evidence that excessive force actually was used.

Section 18–1–704(1), 8B C.R.S.(1986), states in pertinent part:

> [A] person is justified in using physical force upon another person in order to defend himself ... from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person....

Self-defense is permissible in all circumstances when there is use or imminent use of unlawful physical force.

Section 18–1–707 (1)(a), 8B C.R.S.(1986), provides particularized guidance on what force peace officers may lawfully use in making an arrest. It states in pertinent part:

> [A] peace officer is justified in using reasonable and appropriate physical force upon another person when and to the extent that he reasonably believes it necessary:
> (a) To effect an arrest ... or
> (b) To defend himself or a third person from what he reasonably believes to be

the use or imminent use of physical force while effecting or attempting to effect such an arrest. . . .

■ The general self-defense provision in section 18–1–704 therefore permits a person to defend himself when he reasonably believes that unreasonable or excessive force, as proscribed by section 18–1–707(1)(a), is being used by law enforcement officers or that its use is imminent. Section 18–8–103(2),[1] concerning resisting arrest, simply establishes that this same rule applies when an arrest is unlawful, thus rejecting the common law tradition that a person could resist an unlawful arrest even when excessive force was not used. *People v. Hess*, 687 P.2d 443, 445–46 (Colo. 1984). Because self-defense is permissible when unreasonable or excessive force accompanies either lawful or unlawful arrests, we need not decide whether the arrest in this case was lawful.[2]

■ Although this court has not analyzed the unreasonable or excessive force requirement in the context of law enforcement officers displaying weapons in making an arrest, other courts have required self-defense instructions in circumstances in which there is evidence that such force is unreasonable or excessive. *See, e.g., State v. Holley*, 480 So.2d 94, 95 (Fla.1985) (requiring a self-defense instruction when there was evidence that agricultural inspector threatened defendant with a knife in course of arresting him); *Rodriquez v. State*, 544 S.W.2d 382, 383 (Tex.Crim.App. 1976) (requiring self-defense instruction when there was evidence that defendant feared a police officer would shoot and therefore disarmed the officer after seeing the officer push defendant's companion and reach for a pistol following a traffic stop). The Seventh Circuit Court of Appeals has also interpreted the use of "force" to include "demonstration[s] of manpower and firepower" in a 42 U.S.C. § 1983 action against law enforcement officers for using excessive force. *See Gumz v. Morrissette*, 772 F.2d 1395, 1401 (7th Cir.1985), *cert. denied*, 475 U.S. 1123, 106 S.Ct. 1644, 90 L.Ed.2d 189 (1986) (finding the deployment of ten officials armed with a rifle, pistols and shotguns in order to arrest someone for dredging without a permit to be the use of excessive force, but not finding it "so egregious as to be constitutionally excessive").

We now hold that a self-defense instruction is required when evidence has been

---

1. Section 18–8–103(2), 8B C.R.S. (1986), defines the crime of resisting arrest and states in pertinent part:

   It is no defense to a prosecution [for resisting arrest] that the peace officer was attempting to make an arrest which in fact was unlawful, if he was acting under color of his official authority, and in attempting to make the arrest he was not resorting to unreasonable or excessive force giving rise to the right of self-defense.

2. Although the general self-defense provision, § 18–1–704(1), and the specific resisting unlawful arrest provision, § 18–8–103(2), speak in different terms, they prescribe the same standard. Section 18–1–704(1) permits self-defense when unlawful physical force is used or is imminent. Section 18–8–103(2) does not include the language of imminent use but also does not restrict the term "force" to physical force. In *People v. Gallegos*, 193 Colo. 108, 563 P.2d 937 (1977), in determining that "attempted robbery by threat to blow up another's property" was a felony "involving the use of force or violence" we wrote:

   "Force" includes more than actual, applied physical force. "Force" is defined in *Black's Law Dictionary* 773 (4th rev. ed. 1968), as "constraining power, compulsion; strength directed to an end." Again, in *Merriam–Webster New International Dictionary* (Third Edition), p. 887, "force" is defined as, *inter alia*, "power, violence, compulsion, or constraint exerted upon or against a person or thing" and "violence or such threat or display of physical aggression toward a person as reasonably inspires fear of pain, bodily harm, or death." *Accord, Landry v. Daley*, 280 F.Supp. 938 (N.D.Ill.1968); 36A C.J.S. *Force.*

   These definitions of force, including compulsion by threatened violence, comport with our holding in *Davis v. People*, 112 Colo. 452, 150 P.2d 67. There we construed the phrase "by force" in the forcible rape statute as including "force or violence threatened as a result of noncompliance and for the purpose of preventing resistance, or extorting consent."

   193 Colo. at 110, 563 P.2d at 938–39. To interpret "force" differently in construing section 18–8–103(2) would recognize that an arrestee has a right to self-defense only after the arrestee has been shot, and not to recognize any such right in those instances in which the arrestee has a reasonable basis to believe that he is about to be shot.

presented that officers displayed weapons and were commanded to discharge them in the course of effecting an arrest and that such conduct was unreasonable or excessive under the circumstances.

## III.

We must now consider whether in this case the record contains sufficient evidence that unreasonable or excessive force was used to entitle the defendant to an instruction concerning self-defense.

■ In Colorado, an instruction embodying the defendant's theory of the case must be given if the record contains any evidence to support it. *People v. Marquez*, 692 P.2d 1089, 1098 (Colo.1984); *People v. Dillon*, 655 P.2d 841, 845 (Colo.1982). The instruction must be given even if the only supporting evidence is highly improbable testimony by the defendant. *People v. Moya*, 182 Colo. 290, 292–93, 512 P.2d 1155, 1156 (1973). It is for the jury and not for the court to determine the truth of the defendant's theory. *Id.* at 293, 512 P.2d at 1156.

■ Here, the defendant testified that two police officers had guns pointed at him and that someone commanded them to "shoot the dog." The defendant testified that when he heard the command "shoot," he believed the officers were about to do so and he reacted to defend himself. The defendant's testimony concerning the conduct of the officers and the circumstances under which they engaged in such conduct constituted some evidence supporting his theory that the police officers used unreasonable or excessive force and that he, therefore, had a right to defend against it. Consequently, we hold that the trial court erred in refusing to instruct the jury as to the defendant's theory regarding the resisting arrest and attempt to disarm a peace officer charges.

## IV.

■ The defendant did not request a self-defense instruction regarding the charge of criminal mischief. Because that charge stemmed from the defendant's kick-

ing the window out of a police car after he was arrested, handcuffed and placed in the back seat of the car, a self-defense instruction would have been inappropriate. The court of appeals did not discuss the applicability of the defendant's self-defense theory to the criminal mischief charge, so the court's reversal of the criminal mischief conviction appears to have been inadvertent. We conclude that the criminal mischief conviction should be reinstated but that the sentence should be vacated to permit resentencing after the other pending charges have been retried.

## V.

The judgment of the court of appeals is affirmed with respect to the convictions for resisting arrest and attempt to disarm a peace officer. A new trial should therefore be conducted on those charges. The judgment of the court of appeals is reversed with respect to the criminal mischief conviction and that conviction should be reinstated. The sentence for criminal mischief should be vacated and the district court should be permitted to delay sentencing on that conviction until retrial of the other charges is completed. We remand the case to the court of appeals with directions to return it to the district court for additional proceedings consistent with this opinion.