The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
January 24, 2019

## 2019COA6

**No. 15CA1147, *People v. Coahran* — Crimes — Criminal Mischief; Affirmative Defenses — Self-Defense — Use of Physical Force in Defense of Person**

In this criminal case, a division of the court of appeals is faced with the question whether a defendant charged with criminal mischief may be entitled to a jury instruction on self-defense as an affirmative defense under section 18-1-704(1), C.R.S. 2018. The division answers that question "yes."

Specifically, the division concludes that the legislature didn't foreclose self-defense as an affirmative defense where a defendant is charged with a property crime, uses force to defend himself or herself from the use or imminent use of unlawful physical force by another, and takes only those actions which are reasonably

necessary to do so — whether his or her actions are upon the other person directly or indirectly.

COLORADO COURT OF APPEALS                                    **2019COA6**

Court of Appeals No. 15CA1147
El Paso County District Court No. 14CR5013
Honorable Thomas K. Kane, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

April Jo Coahran,

Defendant-Appellant.

JUDGMENT REVERSED, ORDER VACATED,
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE HAWTHORNE
Tow and Nieto*, JJ., concur

Announced January 24, 2019

Philip J. Weiser, Attorney General, Jillian J. Price, Assistant Attorney General,
Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jeffrey Svehla, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2018.

¶ 1     Defendant, April Jo Coahran, was convicted of criminal mischief arising from damage she caused to her ex-boyfriend's car door after he grabbed her wrist and wouldn't let go.  But according to Coahran, she kicked the car door to distract the ex-boyfriend and also to gain enough leverage to free herself and get away.  So, she argued, she acted in self-defense and was entitled to an affirmative defense instruction under section 18-1-704(1), C.R.S. 2018.  The prosecution responded that Colorado's self-defense statute applies only to situations involving the use of physical force against other persons, not against property, and so it didn't apply to Coahran's situation.  The trial court agreed.  Now on appeal, Coahran challenges her conviction because of this alleged instructional error, among other reasons.  She also appeals the trial court's restitution order.

¶ 2     As a matter of first impression in Colorado, we are faced with the question whether a defendant charged with criminal mischief may be entitled to a jury instruction on self-defense as an affirmative defense.  We answer that question "yes."  We reverse Coahran's conviction, vacate the restitution order, and remand for a new trial.

## I.    Background

¶ 3     At trial, the facts surrounding what happened between Coahran and her ex-boyfriend were disputed.

¶ 4     In November 2014, according to Coahran, her ex-boyfriend owed her money, so she reached out to him and suggested they meet for lunch, at which time the ex-boyfriend could repay her.  On the day they planned to meet, Coahran had another appointment.  So she suggested they cancel their lunch plans and meet instead at the ex-boyfriend's workplace.  The ex-boyfriend rejected this idea, and he went to the restaurant during his lunch break as originally planned.

¶ 5     Coahran arrived as soon as she could and saw the ex-boyfriend walking out of the restaurant.  According to Coahran, he looked frustrated.  When she asked him what was wrong, the ex-boyfriend began yelling at her for being late.  Coahran asked the ex-boyfriend for the money, which he refused to give her.  Coahran turned to walk away, but the ex-boyfriend grabbed her wrist to stop her.  She asked him twice to let her go, but he refused.  Worried the situation would escalate and "not wanting to see that side of him," Coahran kicked the ex-boyfriend's car door, hoping to distract him

momentarily and gain enough leverage to free herself. The ex-boyfriend let go of her wrist and she quickly returned to her car and drove away.

¶ 6 At trial, the prosecution introduced photos of the damage to the ex-boyfriend's car door. Coahran admitted she had kicked the car door, but denied that she had intended to cause any damage to it. Instead, Coahran argued in a pretrial conference that she had kicked the car door in self-defense. Specifically, she argued that after the ex-boyfriend grabbed her wrist and wouldn't let go, she was worried the situation would escalate. She kicked the car door to distract the ex-boyfriend so he'd let her go. Kicking the door also gave her leverage to pull away from the ex-boyfriend's grasp, which she didn't have the power to do on her own.

¶ 7 The prosecutor argued, and the trial court agreed, that self-defense as an affirmative defense wasn't available for Coahran's criminal mischief charge because her use of physical force was directed toward property (the car) rather than another person (the ex-boyfriend). The court, however, permitted Coahran to argue that self-defense was an element-negating traverse, that is, her actions

3

were taken in self-defense and negated the "knowingly" mens rea required for the criminal mischief charge.

¶ 8     Coahran was convicted of criminal mischief and ordered to pay restitution to the ex-boyfriend.

¶ 9     On appeal, Coahran asserts that (1) the court improperly instructed the jury on self-defense; (2) the court erred by prohibiting evidence of the ex-boyfriend's prior bad acts; (3) the prosecution failed to prove the damage amount necessary to sustain a conviction for class 6 felony criminal mischief; (4) comments by the ex-boyfriend and the prosecutor improperly shifted the burden of proof to Coahran to prove her innocence; and (5) the court ordered restitution without a hearing and without requiring the prosecution to prove actual pecuniary loss.

## II.     *Self-Defense*

¶ 10    Coahran contends the trial court made two critical errors regarding the self-defense jury instructions, warranting reversal of her conviction, by (1) refusing to instruct the jury on self-defense as an affirmative defense, which impermissibly lowered the prosecution's burden of proof; and (2) misstating the law in its jury instruction.

¶ 11    The People respond that Coahran wasn't entitled to an affirmative defense self-defense instruction because the self-defense statute applies only to situations involving physical force used against other persons, not against property.  And, the People contend, even if the jury instruction given by the court incorrectly stated the law, it inured to Coahran's benefit because she wasn't entitled to such an instruction in the first place.  Thus, the People continue, any error is harmless.

¶ 12    Because we conclude that Coahran was entitled to an affirmative defense self-defense jury instruction, we don't address her second contention as to the instruction given to the jury.

### A.    *Standard of Review*

¶ 13    A trial court has a duty to correctly instruct the jury on the governing law.  *Townsend v. People*, 252 P.3d 1108, 1111 (Colo. 2011).  We review jury instructions de novo to determine whether the instructions accurately do so.  *Riley v. People*, 266 P.3d 1089, 1092 (Colo. 2011).  We consider all the instructions given by the trial court together to determine whether they properly informed the jury.  *Id.*

5

¶ 14    We review a court's decision whether to give a particular jury instruction for an abuse of discretion. *People v. Gwinn*, 2018 COA 130, ¶ 31.  A court abuses its discretion if it bases its ruling on an erroneous understanding or application of the law. *Id.*  We review such legal issues de novo.

¶ 15    We also review de novo whether there's sufficient evidence in the record to support a self-defense jury instruction. *People v. Newell*, 2017 COA 27, ¶ 19.  "When considering an affirmative defense instruction, we consider the evidence in the light most favorable to the defendant." *Id.*

¶ 16    "A defendant need only present 'some credible evidence' in support of the affirmative defense . . . ." *People v. DeWitt*, 275 P.3d 728, 733 (Colo. App. 2011) (quoting § 18-1-407(1), C.R.S. 2018).  If the defendant meets this standard, the prosecution has the burden to disprove the affirmative defense beyond a reasonable doubt. *Id.*  If a trial court refuses to give an affirmative defense self-defense instruction in circumstances where one was appropriate, the prosecution's burden of proof is impermissibly lowered.  This error implicates a defendant's constitutional rights and is reviewed for constitutional harmless error. *People v. Sabell*, 2018 COA 85, ¶ 22

("Where, as here, the trial court erroneously instructs the jury in a manner that lessens the prosecution's burden of proof with respect to an affirmative defense, constitutional error has been committed."); *DeWitt*, 275 P.3d at 733; *see also People v. Kanan*, 186 Colo. 255, 259, 526 P.2d 1339, 1341 (1974) ("Prejudice to the defendant is inevitable when the court instructs the jury in such a way as to reduce the prosecution's obligation to prove each element of its case beyond a reasonable doubt."). "These errors require reversal unless the reviewing court is 'able to declare a belief that [the error] was harmless beyond a reasonable doubt.'" *Hagos v. People*, 2012 CO 63, ¶ 11 (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).

### B.     *Legal Framework and Analysis*

¶ 17      Generally, there are two types of defenses in criminal cases: affirmative defenses and traverses. *See People v. Pickering*, 276 P.3d 553, 555 (Colo. 2011). Affirmative defenses are defenses that admit the defendant committed the elements of the charged act, but seek to justify, excuse, or mitigate the act. *Id.* By contrast, traverses are defenses that effectively refute the possibility that the

defendant committed the charged act by negating an element of it. *Id.*

¶ 18     "Whether an asserted defense is an affirmative defense or a traverse dictates the applicable burden of proof as to the defense's existence or nonexistence." *Roberts v. People*, 2017 CO 76, ¶ 22. When a defendant alleges an affirmative defense and presents a minimal amount of evidence to support it, the court must instruct the jury that the prosecution has the burden of proving beyond a reasonable doubt that the affirmative defense is inapplicable. *Pickering*, 276 P.3d at 555 ("In Colorado, if presented evidence raises the issue of an affirmative defense, the affirmative defense effectively becomes an additional element" and the jury must be instructed that the "prosecution bears the burden of proving beyond a reasonable doubt that the affirmative defense is inapplicable."); *see also DeWitt*, 275 P.3d at 733 (noting that "some credible evidence" is "another way of stating the 'scintilla of evidence' standard" for purposes of amassing enough evidence to warrant an affirmative defense instruction). "The evidence necessary to justify an affirmative defense instruction may come solely from the defendant's testimony, however improbable."

8

*DeWitt*, 275 P.3d at 733. "It is for the jury and not for the court to determine the truth of the defendant's theory." *People v. Fuller*, 781 P.2d 647, 651 (Colo. 1989).

¶ 19 By contrast, where the evidence presented raises the issue of an elemental traverse, "the jury may consider the evidence in determining whether the prosecution has proven the element implicated by the traverse beyond a reasonable doubt, but the defendant is not entitled to an affirmative defense instruction." *Pickering*, 276 P.3d at 555.

¶ 20 While self-defense may be an affirmative defense where a crime requires intent, knowledge, or willfulness, *Pickering* doesn't automatically require an affirmative defense self-defense instruction in every such case. *See Roberts*, ¶¶ 27-28. Where a crime requires recklessness, criminal negligence, or extreme indifference, self-defense is an element-negating traverse. *Pickering*, 276 P.3d at 556.

¶ 21 A person commits criminal mischief when he or she "knowingly damages the real or personal property of one or more other persons . . . in the course of a single criminal episode."

9

§ 18-4-501(1), C.R.S. 2018.  Criminal mischief is a general intent crime.  *See* § 18-1-501(6), C.R.S. 2018.

¶ 22    Colorado's self-defense statute states, in relevant part, as follows:

> [A] person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for that purpose.

§ 18-1-704(1).  The legislature didn't expressly eliminate self-defense for particular crimes, such as criminal mischief, or for a particular class of crimes, such as crimes against property.  *See* § 18-1-704; *People v. DeGreat*, 2015 COA 101, ¶ 12, *aff'd on other grounds*, 2018 CO 83.  And, the self-defense statute is found in the part of the Colorado criminal code titled "Provisions Applicable to Offenses Generally."

¶ 23    Still, the People argue that the legislature intended to confine self-defense to crimes against persons,[1] so it isn't available when a

---

[1] However, the People concede even this categorization isn't black and white.  For example, the People assert that for some general

10

defendant is charged with criminal mischief — a crime against property. For the following reasons, we disagree.

¶ 24 In construing a statute, we turn first to the statute's language. *See Castillo v. People*, 2018 CO 62, ¶ 42. And in doing so, we accord words and phrases their plain and ordinary meanings. *Id.* We also "examine the statutory language in the context of the statute as a whole and strive to give 'consistent, harmonious, and sensible effect to all parts.'" *Reno v. Marks*, 2015 CO 33, ¶ 20 (quoting *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1089 (Colo. 2011)).

¶ 25 By its plain language, the self-defense statute permits the use of physical force "upon another person" to defend oneself from that other person. The dictionary defines the word "upon" to include "having a powerful influence on" and "in or into close proximity or contact with by way of or as if by way of attack." Webster's Third New International Dictionary 2517 (2002); *see also Griego v. People*,

---

intent crimes against persons, including sexual assault, internet sexual exploitation of a child, and stalking, self-defense is never available. We don't address this issue because it's not necessary to do so to resolve the case before us.

11

19 P.3d 1, 9 (Colo. 2001) ("We consult definitions contained in recognized dictionaries to determine the ordinary meaning of words."). Using physical force that has a powerful influence on or is in close proximity with another person is a broad concept that may be applied directly or indirectly.[2] Also, the statute provides that an individual is only permitted to "use a degree of force which [s]he reasonably believes to be necessary for that purpose." § 18-1-704(1).

¶ 26 Reading the subsection as a whole, we conclude the legislature intended to allow an individual, in situations where she uses force to defend herself from the use or imminent use of unlawful physical force, to take only those actions which are reasonably necessary to do so — whether her actions are upon the other person directly or indirectly (e.g., where her actions are designed to have an impact on that other person, change his or her conduct, or trigger a reaction). In either situation, she is using force to defend herself "from what

---

[2] For purposes of this case, we don't decide whether a defendant may assert self-defense as an affirmative defense in situations where the defendant and the other person aren't in close proximity to one another, i.e., in the same location.

[s]he reasonably believes to be the use or imminent use of unlawful physical force by that other person," and she is using only "a degree of force which [s]he reasonably believes to be necessary for that purpose." *Id.*

¶ 27　According to Coahran's testimony, the ex-boyfriend grabbed her wrist when she tried to walk away.  She asked the ex-boyfriend twice to let her go and he refused.  Even though they were in a public parking lot, Coahran worried that the situation would escalate, so she kicked the car door in an effort to get away from the ex-boyfriend.  Under these circumstances, we conclude there was sufficient evidence presented to support a self-defense instruction. *See Pickering*, 276 P.3d at 555.  Coahran's testimony supports giving the instruction because a reasonable jury could have concluded that she knowingly kicked the ex-boyfriend's car door to defend herself by distracting him and by giving herself leverage to pull away from his grasp. *See Riley*, 266 P.3d at 1092 (a defendant is entitled to an instruction on her theory of defense); *Fuller*, 781 P.2d at 651 ("It is for the jury and not for the court to determine the truth of the defendant's theory.").  Because the charged criminal

mischief arose out of her use of force upon the ex-boyfriend (albeit indirectly), Coahran was entitled to a self-defense instruction.

¶ 28    To disallow the instruction under these circumstances would create a perverse incentive where persons in Coahran's situation are encouraged to direct physical force exclusively against the other person (i.e., kick the other person rather than kick the car door). This not only encourages violent behavior, it's inconsistent with the legislature's mandate in the self-defense statute that an individual use only "a degree of force which [s]he reasonably believes to be necessary" to defend herself. § 18-1-704(1). Coahran's theory is that the force necessary to defend herself was kicking the car door to free herself from the ex-boyfriend's grasp and she didn't need to use a greater amount of force, such as kicking the ex-boyfriend. Allowing a self-defense instruction in these circumstances is consistent with the statutory language and its purpose.

¶ 29    We disagree with the People that the self-defense statute contains the additional requirement that the defendant's force be used *directly* upon another person, such that the defendant must injure or make contact with that other person before she is entitled to an affirmative defense instruction. To impose this additional

14

requirement would not only read language into the statute that isn't there, *see People v. Jaramillo*, 183 P.3d 665, 671 (Colo. App. 2008) ("[W]e 'respect the legislature's choice of language . . . [and] do not add words to the statute or subtract words from it.'") (citation omitted), it would also create the perverse incentives discussed above. This conclusion is supported by other jurisdictions faced with a similar dilemma.

¶ 30    For example, the defendant in *Boget v. State* argued that he damaged the windows on a truck only after the driver was trying to — and did — hit him. 74 S.W.3d 23, 24-25 (Tex. Crim. App. 2002). He was charged with criminal mischief, but the trial court refused to instruct the jury on self-defense. The prosecution argued that "self-defense 'by its own terms' involves the use of force against another person" and that "criminal mischief, on the other hand, requires the intentional or knowing damage or destruction of another's tangible property," so the defendant wasn't entitled to a self-defense instruction. *Id.* at 26.

¶ 31    The Texas Court of Criminal Appeals concluded that a self-defense affirmative defense instruction was appropriate, explaining that the defendant's "criminal mischief was part and

15

parcel of his 'use of force against another.' In other words, without [the defendant's] use of force there would have been no criminal mischief." *Id.* at 27. To reach this conclusion, the court analyzed the legislative history of the Texas self-defense statute,[3] which is similar to Colorado's, and also examined the law in other jurisdictions. *Id.* at 27-31. Ultimately, it concluded that the statute was intended to "encourage[] the use of restraint in defensive situations. A rule that allows a charge on self-defense where a person kills another, but prohibits the defense when a person merely damages the other's property is inconsistent with the purposes of the statute." *Id.* at 30. We're persuaded by this reasoning. *See also State v. Arth*, 87 P.3d 1206, 1208-09 (Wash. Ct. App. 2004) (allowing self-defense[4] as a defense to "malicious

---

[3] The Texas self-defense statute states, in relevant part, as follows: "[A] person is justified in using force *against another* when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." Tex. Penal Code Ann. § 9.31 (2017) (emphasis added).

[4] The Washington self-defense statute states, in relevant part, as follows: "The use, attempt, or offer to use force *upon or toward the person of another* is not unlawful in the following cases . . . ." Wash. Rev. Code § 9A.16.020 (2018) (emphasis added).

mischief" charge where defendant damaged vehicle in order to prevent driver from injuring him, and endorsing *Boget*'s policy rationale of "encourag[ing] a defendant to use the least amount of force necessary to protect himself without compromising his defense at trial").

¶ 32    The People attempt to distinguish *Boget* and *Arth*, arguing that the defendants in those cases were threatened by the property that was eventually damaged. While this may be true, it doesn't change our conclusion. Colorado's self-defense statute allows an individual to defend herself by taking only those actions which are reasonably necessary to do so. In some circumstances, such as those in the case before us, this may involve defensive actions designed to affect the other person indirectly or to cause a reaction, which in turn causes property damage (rather than physical injury). *See D.M.L. v. State*, 976 So. 2d 670, 672-73 (Fla. Dist. Ct. App. 2008) (allowing self-defense instruction where the defendant testified he "was using force in self-defense against [the victim] when [the victim] swung [a] bat at him," the defendant held up his skateboard to block the bat, but the skateboard was knocked into the victim's truck and damaged it). So even if the victim isn't threatening the defendant

17

with the damaged property, it may be appropriate to defend oneself in such a way that property is damaged, rather than that the victim is injured. Additionally, these out-of-state cases emphasize the broader policy considerations underlying their decisions. *See Boget*, 74 S.W.3d at 30-31; *Arth*, 87 P.3d at 1208-09. Coahran's situation implicates these considerations because, according to her testimony, she used the least amount of force necessary to defend herself from further injury.

¶ 33 The People also argue that Colorado case law doesn't support giving an affirmative defense instruction for crimes against property.

¶ 34 The parties have identified only three Colorado cases that discuss self-defense jury instructions when a defendant is charged with criminal mischief, and we have found no others. *See Fuller*, 781 P.2d 647; *People v. Smith*, 754 P.2d 1168 (Colo. 1988); *People v. Waters*, 641 P.2d 292 (Colo. App. 1981). In each, the court didn't need to address the exact question that's before us. Instead, each case rejected — implicitly or explicitly — giving the self-defense instruction because there was insufficient evidence showing the property damage resulted from the defendant actually defending

himself. *See Fuller*, 781 P.2d at 648, 651 (the defendant wasn't entitled to a self-defense instruction on a criminal mischief charge for kicking out a police car window because at that point the defendant was "arrested, handcuffed and placed in the back seat of the car"); *Smith*, 754 P.2d at 1170 (the defendant wasn't entitled to a self-defense instruction when he shot at the victim's car after a fistfight with the victim because "the jury could not reasonably have inferred from the evidence presented either that [the defendant] fired his rifle at [the victim's] car with the intent of defending himself or that [the defendant] believed — much less reasonably so — that his shooting [the victim's] car was necessary to defend himself"); *Waters*, 641 P.2d at 295 (there was insufficient evidence to support giving a self-defense instruction where the defendant kicked the victim's car at an intersection and "no evidence in the record [suggested] that the property damage to the victim's automobile resulted from defendant's use of force in defending himself").

¶ 35 Also, some Colorado cases have concluded that a self-defense instruction is appropriate for a property crime. *See, e.g., DeGreat*, ¶ 17 (permitting self-defense instruction for aggravated robbery

19

charge); *People v. Mullins*, 209 P.3d 1147, 1151 (Colo. App. 2008) (permitting self-defense instruction for inciting or engaging in a riot). For example, in *People v. Taylor*, 230 P.3d 1227, 1229 (Colo. App. 2009), *overruled on other grounds by Pickering*, 276 P.3d 553, the defendant was charged with illegal discharge of a firearm, but the trial court disallowed a self-defense instruction. A division of this court reversed, relying in part on the following policy reasons explained in *State v. Henley*, 740 N.E.2d 1113, 1116 (Ohio Ct. App. 2000)[5]:

> To hold that an individual cannot act in self-defense for fear of incurring a charge of criminal damaging or another related charge when the action behind the charge is so intertwined with the attack necessitating self-defense would be to produce an inane legal paradox; it would be illogical, for example, to hold that an individual may be innocent of assault or an even more significant charge due to self-defense, but nonetheless guilty of criminal damaging because property

---

[5] In Ohio, self-defense as an affirmative defense is different from that in Colorado because it's derived both from statute and case law. *See State v. Henley*, 740 N.E.2d 1113, 1115-16 (Ohio Ct. App. 2000) (discussing case law and Ohio Rev. Code Ann. § 2901.05). Even so, the division in *People v. Taylor*, 230 P.3d 1227, 1230-31 (Colo. App. 2009), adopted the rationale underlying *Henley*, which is sound despite Ohio's distinguishable self-defense legal framework.

was necessarily damaged in the course of
doing that which the law allows.

The *Taylor* division determined that because "the jury could have concluded that defendant knowingly discharged his firearm in order to defend himself by scaring off his attackers," a self-defense instruction was appropriate. *Taylor*, 230 P.3d at 1230; *see also id.* at 1231 ("We are unpersuaded by the People's assertion that self-defense does not apply because illegal discharge of a firearm is a crime against property, not persons.").

¶ 36     So, we aren't persuaded by the People's argument that merely because Coahran was charged with a crime against property, the jury shouldn't have been instructed on self-defense as an affirmative defense.

¶ 37     Finally, our conclusion isn't altered by the People's argument as to the availability of the "choice of evils" defense. *See* § 18-1-702, C.R.S. 2018. The choice of evils affirmative defense arises where there is a sudden and unforeseen emergency and the actor must take action to prevent imminent injury. *See, e.g., People v. Trujillo*, 682 P.2d 499, 501 (Colo. App. 1984); *see also Andrews v. People*, 800 P.2d 607, 609-10 (Colo. 1990). But because a

defendant is entitled to an instruction on her theory of defense, *see Riley*, 266 P.3d at 1092, the mere availability of a choice of evils affirmative defense doesn't preclude Coahran from asserting self-defense under section 18-1-704.

¶ 38    Because the trial court didn't properly instruct the jury on self-defense as an affirmative defense, the prosecution didn't bear the burden of disproving self-defense, and Coahran was deprived of her right to possible acquittal on that ground.  Because the prosecution didn't have to disprove the affirmative defense — an element of the crime — the court's error wasn't harmless beyond a reasonable doubt.  *See Hagos*, ¶ 11; *Sabell*, ¶ 22.  Thus, the error warrants reversal of Coahran's conviction.  *See Idrogo v. People*, 818 P.2d 752, 756 (Colo. 1991) ("A trial court's failure to properly instruct a jury on the applicable law of self-defense deprives the defendant of the right to an acquittal on the ground of self-defense if the jury could have had a reasonable doubt as to whether the defendant acted in necessary self-defense."); *Newell*, ¶ 20 (if there is any evidence in the record supporting a self-defense instruction, a court's refusal to give one deprives the accused of the constitutional right to trial by jury).

## III.    Other Contentions

¶ 39     Coahran raises several other contentions, including that the prosecution failed to prove the damage amount necessary to sustain a conviction for class 6 felony mischief.  At trial, the prosecution introduced a repair shop estimate and the ex-boyfriend also testified about how much he thought it would cost to repair his car door.  Coahran contends the former was hearsay and the latter was improper expert opinion testimony.  Because, according to her, this evidence wasn't admissible, she argues there wasn't any competent evidence supporting the damage amount necessary to sustain her conviction.

¶ 40     We must address this sufficiency challenge "because if a defendant is entitled to reversal of her convictions on appeal due to insufficient evidence, the guarantees against double jeopardy in the United States and Colorado Constitutions may preclude retrial." *People v. Marciano*, 2014 COA 92M-2, ¶ 42.  But we don't address Coahran's more specific arguments regarding the admissibility of

23

certain evidence because it's not necessary to the resolution of this case.[6]

¶ 41     We review de novo whether there was sufficient evidence supporting a conviction. *Id.* at ¶ 43. "When reviewing the sufficiency of the evidence, we consider whether the evidence, when viewed in the light most favorable to the prosecution, is substantial and sufficient to support the jury's verdict beyond a reasonable doubt." *Id.* In doing so, we consider the evidence admitted at trial, "whether or not in error." *Id.* at ¶ 45; *see also People v. Hard*, 2014 COA 132, ¶ 39 ("In assessing the sufficiency of the evidence, we must consider all the evidence admitted at trial, including the erroneously admitted evidence . . . ."); *People v. Sisneros*, 44 Colo. App. 65, 67-68, 606 P.2d 1317, 1319 (1980).

¶ 42     The prosecution presented the following evidence to support the damage amount of Coahran's conviction for felony mischief:

- A repair shop estimate for approximately $1171.

---

[6] For the same reason, we also decline to address Coahran's other remaining contentions raised in this appeal.

- The ex-boyfriend's testimony on direct examination that he estimated the damage at around $1100.

- A police officer's testimony that, on the day of the incident, the ex-boyfriend said it would probably cost about $1500 to fix the car door based on previous repair costs.

¶ 43    Giving the prosecution the benefit of every reasonable inference that might fairly be drawn from the evidence, we conclude that a rational fact finder could've found beyond a reasonable doubt that Coahran caused damage of $1000 or more but less than $5000. *See* § 18-4-501(4)(d). Because the evidence admitted at trial was sufficient to sustain her conviction for felony mischief, Coahran may be retried on this charge. *See Hard*, ¶¶ 39-41; *Marciano*, ¶¶ 47-49; *see also Lockhart v. Nelson*, 488 U.S. 33, 40-42 (1988) (a reviewing court must consider all evidence admitted by the district court in deciding whether retrial is permissible under the Double Jeopardy Clause).

## IV.    Conclusion

¶ 44    We reverse Coahran's conviction, vacate the restitution order, and remand for a new trial.

25

JUDGE TOW and JUDGE NIETO concur.