# IN THE COURT OF APPEALS OF IOWA

————————————

No. 24-1511
Filed January 28, 2026

————————————

**State of Iowa,**
Plaintiff–Appellee,

v.

**Brandon Scott Stevens,**
Defendant–Appellant.

————————————

Appeal from the Iowa District Court for Poweshiek County,
The Honorable Myron L. Gookin, Judge.

————————————

**AFFIRMED**

————————————

Martha J. Lucey, State Appellate Defender, and Shellie L. Knipfer,
Assistant Appellate Defender, attorneys for appellant.

Brenna Bird, Attorney General, and Nicholas E. Siefert,
Assistant Attorney General, attorneys for appellee.

————————————

Considered without oral argument
by Tabor, C.J., and Badding and Sandy, JJ.
Opinion by Tabor, C.J.

**TABOR, Chief Judge.**

Brandon Stevens appeals his conviction for criminal mischief in the fourth degree. He claims the State offered insufficient evidence that he intended to damage the windshield of his estranged girlfriend's car. Stevens also argues that the district court abused its discretion in excluding evidence that she had tried to run him over before. Finding ample evidence of his intent, we affirm the jury's verdict. We also find no ground for a new trial.

## I.    Facts and Prior Proceedings

Stevens was in a relationship with Melissa for about five years. They were not married but had a child together. One night in April 2024, they were up late arguing and Stevens revealed that he had sent an "inappropriate" text message to another woman. That woman, Chelsea, was the girlfriend of Stevens's cousin Dylan. Melissa was "beyond mad" at hearing the revelation and went to Dylan's house to get more information. After spending the better part of an hour there, she left for work.

Once Stevens learned about Melissa's visit, he also went to Dylan's house "to get to the bottom" of things. Stevens recalled that his emotions were running high and he "acted like an idiot." For example, when he arrived, he kicked in the door. In the entrance way, he found a baseball bat and picked it up. Seeing only Dylan and Chelsea inside, Stevens ordered Dylan: "Get Melissa over here! I want to talk to her." Stevens punctuated his order with a violent outburst, striking a door frame with the bat and threatening to break things in the house. Stevens also flipped over a table.

To satisfy Stevens, Dylan texted Melissa: "Come over here. Brandon is here flipping out." She replied: "I ain't coming nowhere near him." Showing desperation, Dylan suggested: "Video chat? Please he here fuckin

my shit up." Melissa suggested: "Call the cops. I already let your mom know." Responding to Melissa's text, Vicki—Dylan's mother and Stevens's aunt—soon arrived. Stevens told Vicki he was upset "[b]ecause of a lie that he had had a sexual relation with Dylan's friend Chelsea." Vicki stayed about ten minutes; Stevens never put the bat down during that time. He left carrying it while he rode away on his bike.

Stevens testified that when Melissa didn't show up, he decided to go talk to her. He claimed: "I wasn't trying to fight her. I just wanted to repair things and get everyone on the same page."

Meanwhile, Melissa was heading back to Dylan's house. She was driving a Ford Escape which she purchased about a month earlier. While Stevens biked down the side of the street against oncoming traffic, he spotted Melissa's car. She saw him too. As he started to cross the street, Melissa saw him throw the bat toward her windshield. She pulled over, "pissed" that her windshield was "busted." Stevens told a slightly different version. He testified that he believed Melissa was going to hit him, so he threw the bat in the air and pedaled away. Under either version, the bat landed on Melissa's windshield, leaving a large indentation.[1] Melissa pulled over and left her car to find Stevens on foot.

While biking away, Stevens found a culvert. He dismounted his bike and dragged it down the culvert until "she popped up." Melissa started hitting him in the back with a bat she took from her car. A scuffle ensued, during which he pulled her hair and punched her in the face. When he took away the bat, she threw rocks at him.

---

[1] Melissa testified that it cost $380 to repair her windshield.

From those events, the State charged Stevens with ten criminal counts. A jury convicted him of three: two assaults against Dylan and criminal mischief in the fourth degree in violation of Iowa Code section 716.6(1)(A)(1) (2024). Stevens challenges only his conviction for criminal mischief.

## II. Analysis

Stevens brings two claims. First, he contends the district court should have allowed him to offer prior bad acts evidence to support his justification defense. Second, he contests the State's proof that he intended to damage Melissa's windshield. We begin with his sufficiency claim.

### A. Sufficiency of the evidence

We review a sufficiency-of-the-evidence claim for correction of legal error. *State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022). We are bound by the jury's verdict if it is supported by substantial evidence. *State v. Slaughter*, 3 N.W.3d 540, 546 (Iowa 2024). Substantial evidence exists if the record is "sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* (citation omitted). Evidence must do more than raise "suspicion, speculation, or conjecture." *State v. Casady*, 491 N.W.2d 782, 787 (Iowa 1992). "We consider all evidence, not just the evidence supporting the conviction, and view the evidence in the light most favorable to the State, 'including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *State v. Ernst*, 954 N.W.2d 50, 54 (Iowa 2021) (citation omitted).

To convict Stevens of criminal mischief, the jury had to find substantial evidence supporting these elements:

> 1. On or about April 27, 2024, the defendant damaged a vehicle windshield belonging to Melissa. . . .
> 2. The defendant acted with the specific intent to damage the property.
> 3. When the defendant damaged the property he did not have the right to do so.

Stevens focuses on the second element. To satisfy that element, the State had to show more than Stevens's intent to throw the bat. The State had to prove that Stevens did so with a specific purpose in mind. *See State v. Chang*, 587 N.W.2d 459, 461 (Iowa 1998) (finding criminal mischief statute requires an "intent to damage, deface, alter, or destroy property"). Such intent is typically "shown through 'circumstantial evidence and inferences reasonably drawn from the circumstances.'" *Slaughter*, 3 N.W.3d 540 at 549 (quoting *Crawford*, 974 N.W.2d at 518). Relevant evidence includes an "individual's actions and the surrounding circumstances, including one's conduct before and after the alleged crime." *Id.* A jury may infer that individuals intend the natural and probable consequences of their acts. *State v. Taylor*, 689 N.W.2d 116, 132 (Iowa 2004).

The jury instructions informed the jury of those principles:

> Because determining the defendant's specific intent requires you to decide what he was thinking when an act was done, it is seldom capable of direct proof. Therefore, you should consider facts and circumstances surrounding the act to determine the defendant's specific intent. You may, but are not required to, conclude a person intends the natural results of his acts.

Stevens argues the State offered insufficient evidence of his intent to damage Melissa's vehicle. He relies on his own credibility, arguing his

"testimony regarding his reaction to seeing Melissa drive towards him and when the bat hit the windshield is quite believable." But evaluating witness credibility is not our job. *Slaughter*, 3 N.W.3d at 550 ("[I]t is not within the province of our court 'to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury." (citation omitted)). Our job is to decide whether the evidence supports the jury's findings. *Id.* So we focus on whether the record supports a jury finding of specific intent.

At trial, Stevens offered this colorful description of the events:

> I seen the car coming. I didn't recognize it was Melissa at first because she got a new car. It didn't register. And I seen it coming, like, at me. And then so, "Holy shit!"

> . . . .

> So I threw the bat. And it looked like she was going to hit me.

> . . . .

> It was a boom, boom kind of thing. I threw the bat. I wasn't aiming it. I didn't care where it landed.

> I threw the bat up, popped my bike up on the curb, went through the grass, and got on the sidewalk.

> . . . .

> Actually, the bat went up in the air, sailed in the air. It wasn't a direct throw. It went up in the air. . . . She kept driving, and it came down on her window Psshhhaatttt! I was like, "Oh, my god!" like that was the last thing I wanted to happen. I was like, "Shit!" I didn't want to piss her off.

When asked why he threw the bat, Stevens testified:

> There was two reasons, honestly. Or there's several.

I don't know. We have a volatile history, and she swerved her car at me. She was under the influence driving her car . . . .

It was obvious she was angry at me, so I threw the bat. "Oh, my god." Didn't aim it at her car particularly. I didn't want to break her window. I just threw the bat to try to get her to stop, and the bat went a little further.

. . . .

I just needed my hand free, and I threw it. And I was hoping it was going to be a deterrent to keep her from coming at me.

Answering more questions on why he threw the bat, he testified:

I was in fear of her. Like, that's why I threw. "Oh, shit!" I threw— like, it wasn't to cause her fear. I thought she was going to come after me. She had been mad about Chelsea. She was mad—I mean, I don't know whether you see the text messages maybe just to what she was saying.

I thought I was going to get hit, creamed with the car. She veered it off at me. And it wasn't me riding toward her; it was me going to the side of the street I was supposed to be on, and then her whoooh! (sound effect.) And I had the bat, and I just threw it. Threw it—whooh, whooh, whooh (sound effects)—went up in the air. I popped my bike up on the curb and took off.

. . . I didn't mean to break a window. I didn't know where the bat was going to freaking go. I wasn't aiming at any certain thing. I just threw the bat.

And so I didn't want to break her window, believe you me. That's the last thing I wanted to do because I knew when it did, I knew it was causing problems.

Although Stevens is adamant that he did not mean to hit the vehicle, his testimony is mixed with sentiments of fearing Melissa, claims of self-defense, and admissions that he threw the bat in her "general direction" with the aim to "get her to stop." And the jurors could believe or reject all or any part of his testimony. *See State v. Montgomery*, 25 N.W.3d 309, 316 (Iowa Ct.

App. 2025) (reiterating that juries are "free to reject certain evidence" and "credit other evidence").

The jurors could also consider the surrounding circumstances to infer his intent. Stevens picked up the bat just after kicking in the door of Dylan's house. Stevens admitted that he was "flipping out" and "was just pissed." He "punched [Dylan] in his mouth for the lie" and threatened to "smash" the television. He flipped the table and was "gesturing with the bat." And after walking out, he admitted that he was "[h]ighly upset." Dylan testified that Stevens "hit the doorframe with the bat, knocked a saw off the table, and came back out, started yelling back and forth a little bit, and then eventually he hit me."

The jury was free to reject Stevens's testimony that he did not intend to damage the windshield and to infer from his destruction of property at Dylan's house that he later threw the bat at Melissa's car with the specific purpose of causing damage. The jury could also reasonably infer that Stevens intended the natural result of throwing a bat at a moving vehicle, that some part of it would be damaged from the impact. After reviewing the record and deferring to the jury's factfinding, we find sufficient evidence to support his conviction.

## B. Evidentiary ruling

The district court refused to allow Stevens to offer evidence of Melissa's prior bad acts. We review that ruling for an abuse of discretion. *State v. Thoren*, 970 N.W.2d 611, 620 (Iowa 2022). "A district court abuses its discretion when it bases its decisions on grounds or reasons clearly untenable or to an extent that is clearly unreasonable . . . [or] if it bases its conclusions on an erroneous application of the law." *Id.* (alteration in original) (citation omitted).

Before trial, the State sought to exclude "any statements attributed to [Melissa] indicating that she intended to assault any other person with a baseball bat or vehicle at a time prior to the incident in question." The district court sustained the State's motion in limine but reminded the parties it wasn't a final evidentiary ruling. On day four of the trial, Stevens asked outside the presence of the jury to allow questioning about Melissa's prior bad acts. The State pushed back, saying the evidence was irrelevant, potential prejudice outweighed its probative value, and it was outside the scope of redirect testimony. The court sustained the State's objections.

That same day, Stevens made an offer of proof. In this offer, he outlined two prior incidents where Melissa allegedly pursued him in a vehicle. First, he described a time when she tried to run him down in a car, forcing him into a storm sewer to escape. In the second incident, he claimed that she steered her car toward him and his cousin, after which she texted his cousin, "I should have ran your asses over." The court maintained its earlier ruling disallowing "any evidence of prior acts of [Melissa] to run over the defendant."

Stevens revisits this claim on appeal, contending these prior bad acts were admissible under Iowa Rule of Evidence 5.404(b). That rule states, "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Iowa R. Evid. 5.404(b). But it may be admissible for other purposes "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* The list of permissible uses is not exhaustive. *State v. Nelson*, 791 N.W.2d 414, 425 (Iowa 2010). But, as a default, rule 5.404(b) operates as a rule of exclusion. *State v. Nelson*, 791 N.W.2d 414, 425 (Iowa 2010).

Stevens claims the evidence was relevant to show "he acted in self-defense when he threw the bat." [2] Assuming without deciding that justification could be a defense to criminal mischief, we find no abuse of discretion in the district court's exclusion of Stevens's proffered evidence. Determining admissibility under rule 5.404(b) calls for a three-step analysis. *Thoren*, 970 N.W.2d at 626. First, the court decides whether the evidence is relevant to a legitimate factual issue in dispute. *Id.* Second, the court must find "clear proof" that the person engaged in the act. *Id.* Third, the court must consider whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Id.* Only the third step is at issue. As the State argued at trial, the danger of unfair prejudice from the evidence that Melissa tried to run him over twice before outweighed its probative value.

When weighing the probative value against the danger of unfair prejudice, we consider the proponent's need for the proffered incidents against the backdrop of other available evidence, how well the prior acts advance the issue sought to be proven, and the risk that the evidence would improperly influence the jury. *See State v. Einfeldt*, 914 N.W.2d 773, 784 (Iowa

---

[2] In its appellee's brief, the State raises an interesting question: is justification even a defense to criminal mischief? Other jurisdictions have found that self-defense theories may apply to property crimes. *See, e.g.*, *People v. Coahran*, 436 P.3d 617, 624 (Colo. App. 2019); *D.M.L. v. State*, 976 So.2d 670, 673 (Fla. Dist. Ct. App. 2008); *State v. Arth*, 87 P.3d 1206, 1209 (Wash. Ct. App. 2004); *Boget v. State*, 74 S.W.3d 23, 31 (Tex. Crim. App. 2002). Our court has inconsistent case law on that question. *Compare State v. Berwanger*, No. 23-1949, 2025 WL 403958, at *4 (Iowa Ct. App. Feb. 5, 2025) (declining to apply a justification defense to the charge of criminal mischief), *with State v. Sayler*, No. 14-0904, 2015 WL 3913050, at *4 (Iowa Ct. App. June 24, 2015) (considering justification defense on sufficiency question for criminal mischief conviction). But as the State notes, this issue was not raised in the district court. And Stevens did not file a reply brief to address it on appeal. So, without adequate briefing, we leave it for another day.

2018). First, Stevens had other evidence to support his claim that he acted to defend himself. Given his testimony that he threw the bat because Melissa was driving toward him, he had little need to further convince the jury of his fear of being run over. Next, the prior incidents offered minimal support for his claim that he did not intend to damage the windshield. Finally, the risk of improperly influencing the jury was high. Allowing testimony about the prior acts would have invited the jury to decide that the victim acted in conformity with those earlier incidents. *See generally State v. Lacey*, 968 N.W.2d 792, 808 (Iowa 2021) ("Unfair prejudice exists when minimally relevant evidence is admitted to show the victim got what [they] deserved.").

## III.    Conclusion

We find sufficient evidence in the record to support Stevens's criminal mischief conviction. As to his evidentiary claim, we find no abuse of discretion in the district court's exclusion of the victim's prior bad acts.

**AFFIRMED.**