22CA1935 Peo v Dominguez 02-13-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1935
Adams County District Court No. 12CR1913
Honorable Jeffrey Smith, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Ivan Dominguez,

Defendant-Appellant.

ORDER AFFIRMED

Division I
Opinion by JUDGE YUN
J. Jones and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 13, 2025

Philip J. Weiser, Attorney General, Jillian J. Price, Deputy Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Rachel Z. Geiman, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Ivan Dominguez, appeals the postconviction court's order vacating a felony conviction but denying postconviction relief as to two misdemeanor convictions.  We affirm.

## I.     Background

¶ 2     The following facts are undisputed.  It was midday when police received information from Dominguez's girlfriend that he was selling drugs and would be at an auto mechanic's garage.  When police arrived at the garage, Dominguez hid.  When an officer tried to arrest him, he attempted to flee.  At some point during the ensuing struggle, Deputy Brett Schulze sustained injuries when his face hit an engine part lying on the ground.  The police used substantial force to establish physical control over Dominguez, and Dominguez left the scene in an ambulance.

¶ 3     Later, the police found a cell phone and Dominguez's wallet on top of a pile of junk in the trunk of one of the cars at the garage — a car that did not belong to Dominguez.  They also found a plastic bag containing methamphetamine underneath the pile of junk.

¶ 4     As relevant here, the prosecution charged Dominguez with possession with intent to distribute a schedule II controlled substance, second degree assault, attempted disarming of a peace

officer, and resisting arrest. At trial, Dominguez's (then former) girlfriend testified that she "found out" from Dominguez that he was selling drugs, but she did not see him sell drugs — she only saw him using them. Dominguez testified that he neither used nor sold drugs at the time. He explained that his actions — tossing his wallet into the trunk and hiding — were efforts to avoid deportation to Mexico. He admitted that he resisted arrest but clarified that was "because they were hitting me."

¶ 5 The theories of defense were that the drugs did not belong to Dominguez and that the conduct that gave rise to the assault, disarming, and resisting charges was justified by self-defense against unlawful or excessive force. Dominguez's counsel, Douglas Romero, tried but failed to introduce (1) medical evidence showing that Dominguez hadn't recently used methamphetamine; (2) fingerprint evidence excluding Dominguez as the person who left a latent print on the bag of methamphetamine; and (3) evidence suggesting that the phone found in the trunk did not belong to Dominguez. In rebuttal closing, the prosecution argued that Dominguez had been high on methamphetamine at the time of his arrest.

¶ 6    A jury found Dominguez guilty of the drug charge (a class 3 felony) and two misdemeanors: resisting arrest and third degree assault (a lesser included offense of the second degree assault count). A division of this court affirmed the convictions. *See People v. Dominguez*, (Colo. App. No. 14CA1411, July 30, 2015) (not published pursuant to C.A.R. 35(f)) (*Dominguez I*).

## II.    Postconviction Proceedings

¶ 7    Dominguez filed a Crim. P. 35(c) motion claiming ineffective assistance of trial counsel, among other claims. The motion was supplemented by alternate defense counsel (ADC), who detailed five ineffective assistance claims. The district court denied the motion without an evidentiary hearing.

¶ 8    Dominguez appealed, and a division of this court reversed the district court's order and remanded for an evidentiary hearing on whether Romero had provided ineffective assistance by failing to (1) call an appropriate witness to testify that Dominguez's drug panel screening was negative for drugs, including methamphetamine; (2) call a fingerprint examiner to testify that a latent fingerprint found on the bag of methamphetamine did not match Dominguez's known fingerprints; and (3) inspect the cell

phone found near Dominguez's wallet. *People v. Dominguez*, slip op. at ¶¶ 38, 48 (Colo. App. No. 19CA0509, Oct. 29, 2020) (not published pursuant to C.A.R. 35(e)) (*Dominguez II*). The division noted that the evidence connecting Dominguez to the methamphetamine in the trunk was not overwhelming. *Id.* at ¶¶ 35, 37.

¶ 9 On remand, the stipulated exhibits and testimony demonstrated the following:

- Medical records of a urine screen from the day of Dominguez's arrest showed that his system did not contain detectable levels of any tested controlled substances, including methamphetamine.

- Reports and testimony from both the Colorado Bureau of Investigation and an independent examiner showed that the latent print on the methamphetamine bag was suitable for comparison but did not match Dominguez's known prints.

- A physical investigation of the cell phone from the trunk would have revealed some evidence that the phone did not belong to Dominguez.

¶ 10    Applying *Strickland v. Washington,* 466 U.S. 668 (1984), the postconviction court found that Romero had performed deficiently by failing to present these three pieces of evidence ("the missing evidence") at trial.  It reasoned that the missing evidence made it less likely that the methamphetamine in the trunk belonged to Dominguez.  The court found a reasonable probability that Romero's errors contributed to Dominguez's felony drug conviction, but no reasonable probability that the errors contributed to his misdemeanor convictions for assault and resisting arrest.  It vacated only the felony conviction.

### III.    Discussion

¶ 11    Dominguez challenges the postconviction court's prejudice determination as to his two misdemeanor convictions.  The People concede that Romero's performance was deficient and that Dominguez was prejudiced with respect to his felony drug conviction, but they contend that the postconviction court properly found no prejudice as to the misdemeanor convictions.  Although the case presents a close call, we agree with the postconviction court that Dominguez did not demonstrate sufficient prejudice to reverse his misdemeanor convictions.

### A. Standard of Review and Applicable Law

¶ 12    We review the postconviction court's resolution of a Crim. P. 35(c) motion after a hearing as a mixed question of fact and law. *People v. Corson*, 2016 CO 33, ¶ 25. We defer to the court's factual findings if they are supported by the record but review de novo the court's ultimate conclusions. *Dunlap v. People*, 173 P.3d 1054, 1063 (Colo. 2007). "Where the evidence in the record supports the findings and holding of the postconviction court that presided over an evidentiary hearing, the judgment will not be disturbed on review." *People v. Wardell*, 2020 COA 47, ¶ 27.

¶ 13    In a Crim. P. 35(c) proceeding, the convictions are presumed valid and the defendant bears the burden to prove his entitlement to postconviction relief. *Dunlap*, 173 P.3d at 1061. To prevail on a claim of ineffective assistance of counsel, the defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced him. *Strickland*, 466 U.S. at 687-88.

¶ 14    To prove prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In other

words, the defendant must show "a probability sufficient to undermine confidence in the outcome." *Id.*; *accord Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003). Whether the defendant has made such a showing is a legal conclusion that we review de novo. *People v. Sharp*, 2019 COA 133, ¶ 11.

¶ 15 "Satisfaction of this standard is more difficult than . . . the harmless error standard." *Hagos v. People*, 2012 CO 63, ¶ 13. But it does not require a showing that counsel's deficient performance "more likely than not altered the outcome of the case." *Id.* at ¶ 17. The question we must consider as to each conviction is whether, considering the totality of the evidence absent trial counsel's errors, there is a reasonable probability that the factfinder would have had a reasonable doubt respecting guilt for the relevant offenses. *Strickland*, 466 U.S. at 695.

### B. Analysis

¶ 16 Because it is undisputed that Romero's performance at trial was deficient and that Dominguez showed prejudice as to his drug conviction, we direct our analysis to whether Dominguez showed prejudice as to his misdemeanor convictions. In doing so, we consider the totality of the evidence, including the missing evidence,

7

to assess whether a reasonable probability exists that Dominguez's jury would have had a reasonable doubt about his guilt as to those two offenses. *See Strickland*, 466 U.S. at 695. Because the evidence for the misdemeanor convictions substantially overlaps, we consider those convictions in tandem.

### 1. The Evidence Presented

¶ 17 Even though it was largely testimonial, the evidence supporting Dominguez's misdemeanor convictions was strong. Every eyewitness, including Dominguez, testified that Dominguez did not comply with police orders and tried to avoid arrest. Every eyewitness also testified that it took the efforts of multiple officers to gain physical control over Dominguez. Photographs presented at trial — showing scattered car parts, a downed trash can, and Schulze's injuries — corroborated police testimony that Schulze was injured on a car part during the struggle.

¶ 18 This evidence was uncontroverted at trial and sufficiently establishes the elements of resisting arrest and third degree assault. *See* § 18-8-103(1)(b), C.R.S. 2024 (a person commits resisting arrest if he knowingly attempts to prevent a peace officer, acting under color of their official authority, from effecting an arrest

by using any means which creates a substantial risk of causing bodily injury to the peace officer); *see also* § 18-3-204(1)(a), C.R.S. 2024 (a person commits third degree assault if he knowingly or recklessly causes bodily injury to another person).

¶ 19    Conversely, the evidence supporting the claim of self-defense was weak. *See People v. Fuller*, 781 P.2d 647, 650 (Colo. 1989) (holding that section 18-1-704, C.R.S. 2024, "permits a person to defend himself when he reasonably believes that unreasonable or excessive force . . . is being used by law enforcement officers or that its use is imminent"). By Dominguez's own account, the police did not use *any* physical force until after an officer told him he was under arrest and after he refused to comply with an order to put both of his hands on top of a car. *See* § 18-1-707, C.R.S. 2024 (as relevant here, a peace officer may use physical force only if nonviolent means would be ineffective in effecting an arrest or preventing an escape). This account comported with that of every other eyewitness. And there was no evidence that Dominguez anticipated the imminent use of excessive force at that point.

¶ 20    Only Dominguez testified that the events that immediately followed included force that was plausibly unreasonable or

excessive — a twist of his hand, a punch in the ribs, and a throw towards a car — before he attempted to run. But substantial testimony from other witnesses, including a defense witness, indicated that Dominguez tried to run before any significant force was used. And Dominguez testified that he had an alternative motive for running — to avoid deportation. Moreover, Dominguez's account of the sequence of events was highly inconsistent with the accounts provided by all other eyewitnesses, including his own witnesses.

¶ 21     Given the overall strength of the prosecution's evidence supporting Dominguez's two misdemeanors, he faced a high bar to establish prejudice. *See Strickland*, 466 U.S. at 696 (A verdict "only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."); *accord Dunlap*, 173 P.3d at 1069.

2.     Alleged Prejudice

¶ 22     Dominguez argues that the jurors would have had a reasonable doubt as to the elements of resisting arrest and assault if they had been presented with the missing evidence because (1) it had impeachment value — directly contradicting testimony from

police and Dominguez's girlfriend; (2) it supported Dominguez's assertion of self-defense; and (3) it would have prevented damaging argument by the prosecution in closing. We are not persuaded.

### a. Impeachment Value

¶ 23 First, the record does not support Dominguez's argument that the missing evidence had impeachment value. No witness testified that (1) Dominguez had used methamphetamine or appeared to be high on the day of his arrest; (2) Dominguez's fingerprints were on the bag; or (3) the phone was identified as belonging to Dominguez. Therefore, the missing evidence does not directly contradict any testimony.

¶ 24 Although police officers testified that Dominguez was abnormally strong and unfazed even by a taser, we read that testimony, in context, to suggest only that significant force was warranted — not to imply that Dominguez was high on drugs. Dominguez alleges only one instance of testimony that could have been contradicted by the missing evidence. When questioned about the fingerprint analysis of the bag containing methamphetamine, a deputy testified that the Colorado Bureau of Investigation "couldn't establish the portions of fingerprints that were on the Saran Wrap,

if you will, to positively identify anyone." This statement is true, albeit subject to different interpretations. While the missing evidence could have been used to clarify the deputy's statement, it would not have impeached his testimony. And finally, Dominguez points to no relevant testimony about ownership of the phone, and our review of the record reveals none.

¶ 25　We therefore conclude that the missing evidence had little or no impeachment value.

### b.　Self-Defense

¶ 26　Dominguez's second argument — that the missing evidence was crucial to whether he owned the methamphetamine and, in turn, to whether he believed that the officers' use of force was reasonable — is similarly unpersuasive. Because the record, even including the missing evidence, provides minimal support for Dominguez's claim of self-defense (as discussed in Part II.B.1), we perceive no reasonable probability that the jury's assessment of this defense turned on its perception of whether Dominguez owned the methamphetamine.

### c.    Closing Argument

¶ 27    Third, Dominguez points to the following argument that the prosecutor made in rebuttal closing:

> [W]e know that [Dominguez's] actions are at least reckless, and that's third degree assault, because . . . all of his actions were reckless. And why do we know his actions were reckless? Because we know he was high; he was high on meth. The officers said they'd never dealt with anybody who had this kind of strength. He's getting tased. He doesn't even remember getting tased when he's up on the stand talking to you about it. Why? Because he didn't remember what happened when this all went down. Why? Because he' s high on meth.

Romero objected, asserting that the argument assumed facts not in evidence. The court allowed it, reminding the jury for the second time that argument is not evidence. While we agree with Dominguez that the argument, facilitated by the missing evidence, was certainly damaging, we also presume that the jury followed the trial court's admonition and did not treat the argument as evidence. *See Qwest Servs. Corp. v. Blood*, 252 P.3d 1071, 1088 ("Absent evidence to the contrary, we presume that a jury follows a trial court's instructions."). Accordingly, the argument does not undermine our confidence in the jury's misdemeanor verdicts.

13

¶ 28   In sum, considering the totality of the evidence, we perceive no reasonable probability that, had the jury been privy to the missing evidence, it would have had a reasonable doubt regarding Dominguez's guilt for the misdemeanor offenses committed in the course of evading arrest.

IV.   Disposition

¶ 29   The order is affirmed.

JUDGE J. JONES and JUDGE BROWN concur.